JAMES EDWARD SHROPSHIRE, JR. *v.* STATE OF INDIANA.

[No. 670S140. Filed February 25, 1972.]

*Frank E. Spencer,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert Zaban,* Deputy Attorney General, for appellee.

DEBRULER, J.—The appellant was convicted by a jury of first degree burglary in the Criminal Court of Marion County. The evidence in this case indicates that a homeowner, returning to his home at approximately 8:00 p.m. one evening, surprised several men inside his house. The homeowner was armed with a revolver, and ordered the men to stop. In the ensuing confusion, several shots were fired, including two by the homeowner. Several people then emerged from the front door apparently carrying someone. The people who emerged from the inside of the house got away, and the witness could make no identifications. He testified that a TV and a rifle had been moved inside his house, and that he found blood on the rug and the chair near the door. Later the appellant was located in a hospital with a bullet wound in his leg. Ballistics

tests indicated that the bullet taken from the appellant's leg came from the revolver of the homeowner in this case. The appellant took the stand in his own behalf and denied any intention to burglarize the house, testifying that he and his friends were looking for someone who had cheated them out of some money.

The sole allegation of error in this case is that the cross examination of the appellant violated his due process rights and that the trial court erred in requiring the appellant to answer certain highly prejudicial questions. The prosecuting attorney questioned the defendant on cross examination as follows:

"Q. You have been arrested and convicted of first degree burglary before, haven't you?

A. No, I haven't.

Q. Never have? How bout in 1968, in October, you got the minor statute, didn't you?

A. No I was convicted of theft not burglary.

Q. Not burglary?

A. Not burglary.

Q. Is that right, have you had occasion to talk to Officer Rudd before?

A. Yes, sir, I have many times.

Q. Numerous occasions, haven't you, and you talked to him about burglary before, haven't you?

A. I don't have to answer that question. I was a juvenile at the time.

THE COURT: Answer the question.

A. No, I haven't.

Q. In fact you have talked to him about forty different burglaries that you have been involved in?

A. What are you talking about, when I was a juvenile?

Q. I am talking about between 1960 and 1965.

MR. WILSON: I will object to that . . .

A. Man, I am not responsible for my actions.

MR. WILSON: . . . I will object to the question. If he wants to ask him what he has been convicted of . . .

MR. CARTER: I am talking to him about conversation.

THE COURT: The answer is in the record. All right, go ahead.

Q. Have you ever been involved in any other shootings?
A. Yes, I have.
Q. When was that?
A. 1965.
Q. Who did you shoot?
A. Do I have to answer that, your honor?

THE COURT: Yes.

Q. Would it be a man by the name of Schilling?
A. Your honor, may I ask a question?

THE COURT: Just answer the question.

A. Yes.
Q. Was that Officer Schilling?
A. That's why you have a grudge against me now."

Somewhat later in the cross examination, the following questions and answers appear:

"Q. How often did you work?
A. Three or four days out of a week.
Q. What did you do the rest of the time, this was when you were kind of living the old ghetto life, wasn't it, living off the fat of the land, gambling, shooting, that sort of thing?
A. Not shooting, I am a gambler, I am not a burglar.
Q. I see, you are not a burglar. In fact you admitted to Officer Rudd forty burglaries and you are not a burglar?
A. I am not a burglar.
Q. Oh, I see. Well, how many burglaries do you have to be involved in before you consider yourself a burglar?

MR. WILSON: I will object . . .

A. That's all in the past . . .

MR. WILSON: . . . Your Honor . . .

A. That's all in the past.

THE COURT: The answer is in the record.

Q. So you have been a burglar?

A. Oh, yes, I had been a burglar, a well known burglar.

Q. A pretty good one, right?

A. I considered myself one of the best, at the time."

Still later, when cross examining the appellant's mother, the following colloquey occurred:

"Q. You are not saying that either one of these boys have really been good boys?

A. No, I wouldn't say they had been good boys.

Q. Forty burglaries that this boy here admitted is not really what you would call a good boy, is it?

A. I wouldn't say he is such a good boy but in my eyes, I think he is.

Q. Shooting a policeman and leaving him to die is not a good boy either, is it?

A. No, sir, I don't think . . .

MR. WILSON: I will object to that. That has nothing to do with the issues in this case at all.

THE COURT: Objection sustained."

The appellant here does not raise questions of guilt or innocence, but argues that he did not receive a fair trial. In this regard, it is well to recall the words of Justice Arterburn in *Wasy* v. *State* (1956), 236 Ind. 215, 138 N. E. 2d 1, which are as relevant today as when they were written:

"It is not a question, was the defendant guilty? The question is, did she have a fair trial? Under our system of criminal law, a guilty person, as well as an innocent person, is entitled to a fair and impartial trial. No court has the right to assume the guilt of any person accused until that person has been given a fair and impartial trial followed by a finding of guilt. The courts, and all its officials, should be dedicated to these fundamental principles of American justice."

The appellant argues that the prosecuting attorney in this case violated his duty to avoid the use of unethical or inflam-

matory tactics in an attempt to convict an accused when ██ he cross examined the accused in the above manner.

We agree, and hold that the appellant was denied a fair and impartial trial in this case. *Wasy* v. *State, supra.* While it is true that when a defendant takes the witness stand the State may cross examine him concerning his credibility, it has always been clear that this attack on credibility is limited. Specifically, "the State is not permitted to inquire into specific acts of misconduct other than prior convictions." *Hensley* v. *State* (1971), 256 Ind. 258, 268 N. E. 2d 90, 92, and, in addition, actual convictions in a juvenile court are inadmissible for impeachment purposes. I.C. 1971, 31-5-7-15, being Burns § 9-3215; *Woodley* v. *State* (1949), 227 Ind. 407, 86 N. E. 2d 529.

The State argues that the appellant has waived his objections to this cross examination by failing to object to the questions at the proper time. However, we do not find █ a waiver in this case where the appellant himself attempted to invoke the protection of the court in not answering the objectionable questions, and appellant's counsel did inject two objections which were ignored.

The judgment of the trial court is reversed and a new trial is ordered. Arterburn, C. J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 279 N. E. 2d 225.