IRENE BRYANT *v.* STATE OF INDIANA.

[No. 472S38. Filed September 17, 1973.]

*Richard F. Joyce, Kizer and Neu,* of Plymouth, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged with Murder in the First Degree, and in a trial by jury, she was convicted of Murder in the Second Degree. She was sentenced to imprisonment for not less than fifteen (15) nor more than twenty-five (25) years.

Two issues are raised by this appeal:

1. Whether the defendant should be discharged under Criminal Rule 4, after having been held in jail for more than six months without trial.

2. Whether the trial court erred by permitting cross-examination of the defendant concerning testimony she had given as the defendant in a prior criminal trial.

(1) The denial of the defendant's motion for discharge is affirmed. Although she was not brought to trial until six months and twelve days following the docketing of her case in the Marshall Circuit Court on change of venue, this lapse of time alone is not sufficient to warrant a discharge under Criminal Rule 4. "* * * The six months limitation has been prescribed by this Court as a reasonable time. It is in no sense a constitutional guaranty and is subject to reasonable exceptions, limitations and modifications, as we shall determine necessary to carry out its

constitutional purpose." *Easton* v. *State* (1972), 258 Ind. 204, 280 N. E. 2d 307 at 308.

Defendant was entitled to be brought to trial within six months, and she was not required to take affirmative steps to obtain a trial within that period. However, the record discloses that the trial date of September 20, 1971 was selected on June 11, 1971. This was slightly less than three months after docketing in Marshall County and slightly more than three months prior to the deadline fixed by the rule. Although the record does not reflect the presence of the defendant or her counsel in court at the time of the setting (June 11, 1971), counsel acknowledges that he received notice of the trial date by mail in June. He voiced no objection until after the rule time had expired. He is charged with knowledge, from the date he is notified, that the trial date did not fall within the period prescribed by the rule. His failure to object, at the earliest opportunity thereafter, must be regarded as acquiescence therein and a waiver of the right to discharge for such cause. No valid distinction can be made between this and the rule requiring the complaining party to make timely objection, i.e. in time to allow the alleged error to be avoided or corrected.

(2) In 1957, the defendant stood trial for second degree murder. In that trial, she claimed self defense and testified to a week of continuous drinking by the deceased and to a series of sexual assaults and beatings. She was acquitted. In the trial of the case at bar, she also claimed self defense and testified to sustained drinking and a series of sexual assaults and beatings by the deceased. Upon cross-examination, the defendant was questioned extensively regarding her testimony from the witness stand in the 1957 trial. The following excerpts from the bill of exceptions in the case now before us are material to our determination.

"Q. Back in 1957, you testified from the witness stand, did you not?

A. Yes, sir.

Q. Now let me see if I have your story so far pretty well summarized. Harvey came around to your apartment between January 18th and January 26th several times a day.

A. Yes.

Q. Always drinking and on those occasions you were drinking some.

A. Yes, sir.

Q. And back in 1957 you testified that a week prior to the incident involved, you testified to a week of continuous drinking did you not?

A. Yes, sir.

Q. And this time the same case—

MR. JOYCE: Your honor, please, I don't think what happened in 1957 has anything to do with this case. It is immaterial. This particular case, there is no exception to the general rule in regard to this particular testimony. The court has been apprised and I am sure he is familiar with the rules.

Court: I will overrule the objection to that question.

A. You mean now—this past January?

Q. Right. The same thing occurred, is that correct?

A. Yes, sir.

Q. And you testified on direct-examination yesterday, I believe it was, that this incident and drinking—both of those occurred in your own home or your own apartment, is that correct?

A. Yes, sir.

Q. And back in 1957, you testified that the drinking and the incident occurred also in your home, did you not?

A. Yes, sir."

Transcript, pp. 591-592.

\* \* \* \* \*

"Q. How many times have you been sexually assaulted in your life?

A. Actually sexuall (sic) assaulted or attempted?

Q. Well, assault implies an attempt, battery implies the complete act. I said assault.

A. None.

Q. Never before this day has anyone attempted to assault you?

A. It has been attempted, yes.

Q. That's what I ask. How many times has it been attempted.

A. Numerous times.

Q. Give me an estimate.

A. Six - eight.

Q. Four of them occurred the week of January 26th.

A. Before this.

Q. Before this, were any of them before?

A. Six or eight before this.

Q. Back in 1957 didn't you testify that you had been sexually assaulted?

MR. JOYCE: I object.

MR. WALLSMITH: I haven't finished my question.

MR. JOYCE: No, we are right back to where we were before.

MR. WALLSMITH: A proper foundation has been laid for this question.

MR. JOYCE: I don't believe so. I am going to object to any further line of questioning.

Court: Will you approach the bench again?

MR. WALLSMITH: This has been said before and that is the whole purpose of cross-examination. She is giving the same story today.

Court: Read the question.

Reporter: Q Back in 1957 didn't you testify that you had been sexually assaulted?

MR. WALLSMITH: And I haven't finished my question.

MR. MURRAY: We object to this question for the reason it bears too closely upon the possibility of making the defendant a party in a previous crime in which she was not convicted; and further to show the court that the only evidence of prior crimes can be shown only by way of convictions.

Court: I will overrule the objection. You may complete your question.

Q. The question is: Back in 1957 did you not testify that you had been sexually assaulted at least three times?

A. No.

MR. JOYCE: Same objection (for the reason it bears too closely upon the possibility of making the defendant a party in a previous crime in which she was not convicted).

Court: Overruled.

Q. Back in 1957 did you testify that you had been sexually assaulted.

A. That it was attempted.

Q. And di (sic) you testify how many times you were?

A. I don't remember that far back.

Q. Now, during the week from January 18th of (sic) January 26th, 1971, did you testify yesterday that Harvey Caudill pulled your hair, beat you, hit you in the back of your head on numerous occasions?

A. Yes.

Q. How many times did this occur in that particular span of time?

A. I didn't keep track of them.

Q. Well, you testified as to every matter of every day just about. How many times—you can have a minute to search your mind.

A. About every time he would come.

Q. So for eight days, he came every day did he not?

A. Yes, sir.

Q. And sometimes on those days he would come three or four times?

A. Come and go.

Q. And he beat you up every time he came?

A. No.

Q. About every time?

A. Before he would leave.

Q. So about every time he left, he would beat you up and hit you?

A. Yes, sir.

Q. So for this continuous week, you were probably beaten up, would you say, twenty times?

A. I didn't say I was beaten up.

Q. Well, that he pulled your hair and hit you.

A. Yes, sir.

Q. About twenty times?

A. No.

Q. How many times?

A. Eight, nine times. It would happen when he would leave and I would tell him to go.

Q. This was about every day?

A. Yes, sir.

Q. As a matter of fact, it was every day.

A. Yes, sir.

Q. Back in 1957, did you not testify then—

MR. JOYCE: Same objection (for the reason it bears too closely upon the possibility of making the defendant a party in a previous crime in which she was not convicted).

Court: Overruled.

Q. Back in 1957 did you not testify that for a week's time prior to the incident involved you were beaten every day?

A. No, sir.

MR. JOYCE: Same objection (for the reason it bears too closely upon the possibility of making the defendant a party in a previous crime in which she was not convicted).

Court: Overruled.

Q. During the period of time when you testified back in 1957, did you not testify as to physical beatings then?

A. Once.

MR. JOYCE: Same objection (for the reason it bears too closely upon the possibility of making the defendant a party in a previous crime in which she was not convicted).

Court: Overruled."

Transcript, pp. 596-600.

* * * * *

"Q. Now, you testified today and you testified yesterday about these bandaids, how you got them on. Back in 1957, did you also talk about some bandaids?

A. I don't remember."

Transcript, p. 618.

* * * * *

"Q. So the fact that Harvey brought whiskey in, you don't object to alcoholic beverages, do you?

A. I object to putting it in my apartment.

Q. For how long have you objected to putting it in your apartment?

A. From the beginning when I gave him money to go get it.

Q. Well, back in 1957, you didn't object to alcoholic beverages, did you?

A. No.

Q. In fact, you testified that year there was large amounts of alcoholic beverages consumed in your home during the week.

A. Yes, sir.

Q. By the way, back at that time—1956 and 1957—were you married?

A. I think we covered that.

Q. Were you married to Mr. Gerose back then?

A. No.

Q. Had you been divorced from Mr. Gerose back then?

A. Yes, sir.

Q. At the time this occurred, you weren't divorced, were you, from Mr. Bryant, back in January, 1971, is that correct?

A. No.

Q. He lived down in Winamac, didn't he? Or outside of Winamac?

A. I don't know where he lived.

Q. Didn't you live with him for a period of time after you were married.

A. You said before he married.

Q. That is correct.

A. We lived out in the country by the airport.

Q. Was that his home?

A. No. We rented.

Q. Did you own that property in that area?

A. No, sir.

Q. But on January 26th, you were still legally married, isn't that correct?

A. Yes."

Transcript, pp. 623-624.

\* \* \* \* \*

"Q. Back in 1957, did you also testify as to arguments with another person that occurred a week before the incident?

MR. JOYCE: I am going to object to that.

MR. WALLSMITH: She said she did testify as to those arguments with Harvey.

MR. JOYCE: With Harvey, yes.

Court: I will overrule the objection.

Q. You may answer the question.

A. What was the objection (sic).

Q. Will you read it?

Reporter reads: Back in 1957, did you also testify as to arguments with another person that occurred a week before the incident?

Q. You can answer that yes or no.

A. Yes. You have to."

Transcript, p. 625.

The foregoing cross-examination was permitted, notwithstanding that upon the defendant's prior written motion, the court had issued the following protective order:

"THE COURT on request of the Defendant now orders the Prosecutor and any person involved in the prosecution of this case to:

1. Refrain from making mention at any time during the trial of this cause any prior criminal prosecutions of the Defendant, Irene Bryant, unless a showing has been made, out of the presence of the jury, that such prosecution resulted in the finding or verdict of guilty, and

2. Refrain from mentioning any facts during the trial of this cause connected with or related to the matters stated in number one above.

DATED this 20th day of September, 1971."

The defendant made numerous timely objections and twice moved for a mistrial, asserting that the questions were designed to inform the jury that the defendant had been charged previously with a similar offense, had given a similar story and thereby to prejudice her defense in the eyes of the jury. The State contends that the questions were for the purpose of impeaching the witness' credibility and that it "scrupulously avoided revealing the nature of the trial in 1957," whether it was a criminal or civil action and the defendant's roll therein. It is our opinion, however, that the State, by deliberately calculated innuendo, improperly revealed the prior charges against the defendant.

It is difficult to follow the State's argument in favor of permitting the foregoing cross-examination. It is clear, however, that the defendant's credibilty could not have been im-

peached by the 1957 episode, because she was not convicted. Nor was her prior testimony admissible for the purpose of impeachment by the disclosure of prior inconsistent or contradictory statements, because no foundation had been or could have been laid, inasmuch as the prior statement had no materiality to the matter then in litigation. Collateral matter cannot be made the basis for an impeachment. *Miller* v. *State* (1910), 174 Ind. 255, 91 N. E. 930; *Stout* v. *State* (1910), 174 Ind. 395, 92 N. E. 161; *Barton* v. *State* (1900), 154 Ind. 670, 57 N. E. 515; *Blum* v. *State* (1925), 196 Ind. 675, 148 N. E. 193; *Miller* v. *Coulter* (1901), 156 Ind. 290, 59 N. E. 853.

The test as to whether a matter is collateral is whether the party seeking to introduce it for purposes of contradiction would be entitled to prove it as a part of his case. 98 C. J. S. Witnesses § 633(b), p. 654. It is obvious that the defendant's testimony in the prior trial had no relevance to the guilt or innocence in the latter one. It is just as obvious, as urged by the defendant, that the State's objective with this line of cross-examination was to do by innuendo what it could not do directly and that was to apprise the jury of the defendant's prior involvement in an incident under circumstances the same or amazingly similar to the one before it. The effect could hardly be other than devastating to the defense.

The question before this Court is not whether the defendant is guilty or innocent but whether she had a fair trial. It was recently said in *Shropshire* v. *State* (1972), 258 Ind. 39, 279 N. E. 2d 225 that the prosecuting attorney violated his duty to avoid the use of unethical or inflammatory tactics in his attempt to convict the defendant when he cross-examined her in the manner reflected above. "While it is true that when a defendant takes the witness stand the State may cross examine him concerning his credibility, it has always been clear that this attack on credibility is limited. Specifically, 'the State is not permitted to inquire

into specific acts of misconduct other than prior convictions.' "
(Citing *Hensley* v. *State* (1971), 256 Ind. 258, 268 N. E. 2d
90, 92.) 279 N. E. 2d 225 at 227.

The judgment of the trial court is reversed. The cause is
remanded, and the trial court is directed to sustain the de-
fendant's motion to correct errors and to grant her a new trial.

DeBruler, Givan and Hunter, JJ., concur; Arterburn, C.J.,
dissents.

NOTE.—Reported in 301 N. E. 2d 179.