Roy E. DUNKLE, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–281A57.

Court of Appeals of Indiana,
First District.

Aug. 31, 1981.

Rehearing Denied Sept. 23, 1981.

Linda Stemmer, McCoy & Husmann, Union City, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

ROBERTSON, Judge.

Roy E. Dunkle appeals his conviction for assisting a criminal, a Class A misdemeanor, for which he received a six month sentence and a $200 fine. We affirm.

The facts favorable to the State reveal that on September 16, 1979, at approximately 10:45 P.M., William York informed the Randolph County Sheriff's Department that he had heard a truck with a loud muffler in his barn lot and that after investigating, he found at least one of his hogs was missing. York reported that a black and white spotted mixed breed hog was missing. At approximately 12:10 A.M., on September 17, 1979, a Deputy Sheriff observed a brown truck with a loud muffler and stopped it to investigate. The officer found two freshly slaughtered pigs in the truck and one was a black and white mixed breed. The officer questioned the driver and the passenger of the truck, Nelson Dilk and his wife, Linda. They stated that they got the hogs from the defendant, Roy Dunkle, who lived on Randolph County Road 950 South. The Deputy notified William

York, who had discovered an additional hog was missing. York came to the scene and identified both hogs. He informed the Deputy that the black and white hog was pregnant. The hogs had been gutted. The Deputy arrested the Dilks and on the basis of the facts presented thus far obtained a search warrant for Roy Dunkle's residence.

The Deputy and other officers searched Dunkle's farm and found hog entrails buried there, including fetal pigs, and ears. The ears had originally been tagged for identification purposes by York. The officers arrested Dunkle and he was subsequently charged with theft and assisting a criminal.

At trial Dilk testified against Dunkle, essentially describing him as the instigator of the theft. Dunkle admitted cleaning the hogs for Dilk at approximately 11:30 P.M. on September 16, 1979, but contended he did not commit the theft and offered an alibi which placed him at a neighbor's home when the theft occurred. Dunkle explained that the Dilks brought the hogs to his farm after they had been killed. Based upon these facts, the jury concluded Dunkle was not guilty of theft, but was guilty of assisting a criminal.

■ Dunkle raises several issues for our review. He initially argues the trial court erred in denying him a change of venue because of pretrial publicity. In support of this argument, Dunkle presents three local newspaper accounts in which stories about Dilk's arrest appeared and in which Dilk presented his story blaming Dunkle. We do not think this coverage is sufficient to show the trial court abused its discretion by denying the change of venue. *Mendez v. State*, (1977) 267 Ind. 309, 370 N.E.2d 323. We also note that based upon its verdict, the jury apparently did not believe Dilk's account of the crime and Dunkle was not prejudiced by the coverage.

■ Dunkle asserts the trial court erred in denying his motion to suppress evidence which attacked the search warrant. The basis for the motion, and his appellate argument, is that the search warrant was improper because the Deputy's affidavit requesting the warrant relied on Dilk's statement that he got the hogs from Dunkle. Dunkle argues that probable cause was lacking because there was nothing to show Dilk was a credible informant. We disagree. We, of course, recognize the criteria set forth in *Aguilar v. Texas*, (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and *Ind.Code* 35–1–6–2, which essentially require that a judge who examines an affidavit for a search warrant must be able to independently determine the validity of hearsay information in the affidavit. We think the facts here support the determination that Dilk's statement was reliable enough to support issuance of a warrant. He was apprehended with the stolen property, shortly after it was stolen, and although Dilk's statement may have had a self serving motivation, it was reasonable to conclude, under the circumstances, that the hogs had been gutted at Dunkle's farm.

■ Next, Dunkle argues the court erred in denying his motion in limine, which sought to exclude a prior uncounseled misdemeanor conviction from being used for impeachment purposes. Dunkle testified about his prior conviction on direct examination. The denial of a motion in limine is not reversible error in itself and a party must raise an objection at the time the questionable evidence is introduced at trial to preserve the issue. *Stubblefield v. State*, (1979) Ind., 386 N.E.2d 665. Since there was no objection, but to the contrary Dunkle's own introduction of the evidence, there was no error.

■ Dunkle also argues the trial court erred by refusing to recall Dilk so that he could be impeached by evidence of a prior arrest. The arrest was discovered by the defendant after Dilk testified that he had not previously been arrested. The arrest did not result in a conviction admissible under *Ashton v. State*, (1972) 258 Ind. 51, 279 N.E.2d 210. Prior arrests which do not result in convictions are not admissible for impeachment purposes. *Bryant v. State*, (1973) 261 Ind. 172, 301 N.E.2d 179. We are aware that there is some flexibility in this

rule and that if a defendant raises such matters on direct examination, it is not error for the prosecution to raise the issues on cross-examination. *Wright v. State,* (1975) 163 Ind.App. 502, 324 N.E.2d 835. However, this does not lead us to the conclusion that reversible error occurred in this case. Given the general prohibition on using prior arrests for impeachment purposes and the fact that Dilk's credibility was impeached by evidence of his arrest and guilty plea for theft of the hogs, we do not think the trial court erred in refusing to allow Dunkle to question Dilk about the prior arrest. Additionally, it is apparent from the jury's verdict that they had grave doubts about Dilk's credibility so Dunkle was not prejudiced by the exclusion.

■ Dunkle argues the trial court erred in two instances by refusing to give his tendered instructions. The defendant's tendered instructions numbered 1, 2, 5, and 8 all dealt with the standard of proof necessary for a criminal conviction and explained the concept of "reasonable doubt". The trial judge refused these instructions, but gave other instructions which explained the presumption of innocence given to a defendant, the standard of proof, and the concept of reasonable doubt. Because the issues raised by Dunkle's tendered instructions were adequately covered by the instructions given, there was no error. *Gilmore v. State,* (1981) Ind., 415 N.E.2d 70.

■ This reasoning also applies to Dunkle's assertion that the trial court erred in refusing to give his instruction number 5, pertaining to Dilk's testimony. Dunkle's instruction placed great emphasis on the fact Dilk was testifying to obtain favorable treatment on charges against him. The instruction which the trial court gave properly explained that an accomplice is competent to testify and that his testimony is to be weighed on the same basis as any other witness. This instruction adequately cover-

ed the issue of an accomplice's testimony. Indeed, if the trial court had given Dunkle's instruction, it would have improperly disparaged Dilk's testimony. *Cox v. State,* (1981) Ind., 419 N.E.2d 1279.

■ Finally, Dunkle argues the trial court erred in considering his prior uncounseled conviction for theft and his driving record as part of his presentence report. Pursuant to *Ind.Code* 35–4.1–4–10, we find no error in the inclusion of this information. These matters are properly a part of the history of Dunkle's criminality. Additionally, the probation officer is given wide discretion to include matters which he deems relevant in the report. *Lottie v. State,* (1980) Ind., 406 N.E.2d 632.

Finding no error, the judgment of the court below is affirmed.

NEAL, P. J., concurs.

RATLIFF, J., dissents by opinion.

RATLIFF, Judge, dissenting.

I respectfully dissent from the majority opinion insofar as it holds the affidavit for a search warrant in this case to be sufficient.

The issuance of a search warrant must be done in strict compliance with the constitutional and statutory law pertaining thereto. *Layman v. State,* (1980) Ind.App., 407 N.E.2d 259, *trans. denied; Rohlfing v. State,* (1949) 227 Ind. 619, 88 N.E.2d 148. Article I, § 11 of the Indiana Constitution, which is based upon the fourth amendment of the Constitution of the United States,[1] reads as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

1. The fourth amendment to the United States Constitution states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Relevant Indiana statutory law pertaining to issuance of search warrants provides:

"(a) Except as provided in subsection (c) of this section, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit, particularly describing the house or place to be searched and the things to be searched for, or particularly describing the person to be arrested, and alleging substantially the offense in relation thereto, and that the affiant believes and has good cause to believe that such things as are to be searched for are there concealed, or that the person to be arrested committed said offense, and setting forth the facts then in knowledge of the affiant or information based on credible hearsay, constituting the probable cause. When based on hearsay, the affidavit shall contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished.

. . . .

"(c) In lieu of an affidavit or in addition thereto, a search or arrest warrant may be issued upon sworn testimony of the same facts required for affidavits in a nonadversary hearing before a judge; the proceeding shall be recorded or transcribed by a court reporter or recording device."

Ind.Code 35–1–6–2.

As we said in *Layman* "[t]he affidavit is to apprise the magistrate 'of the underlying facts and circumstances tending to show that there is probable cause.'" 407 N.E.2d at 262. The determination of probable cause must be made by a detached, impartial magistrate rather than by the police. *Layman v. State, supra.* Our statute, IC 35–1–6–2, allows the use of *credible hearsay* in affidavits for search warrants, but requires the affidavit to "contain reliable information establishing the credibility of the source . . . of the hearsay and establishing that there is a factual basis for the information furnished." In *Madden v. State,* (1975) 263 Ind. 223, 328 N.E.2d 727, our supreme

court held that the affidavit must contain facts establishing the credibility of the person who supplied the information and whether that person supplied the information from facts within his personal knowledge. Justice Prentice, writing in *Madden,* 328 N.E.2d at 729, stated: "The function of the affiant in this situation is primarily one of relaying factual information from the person who has personal knowledge of it to the person who is to make the 'probable cause' determination. The judgments are to be those of the issuing authority and not merely those of the seeker of the warrant. . . ."

Thus, when the affidavit is based upon hearsay, it must state facts establishing the reliability of the declarant, which reliability must be established before a finding of probable cause can be made. *Pawloski v. State,* (1978) 269 Ind. 350, 380 N.E.2d 1280. Reliability can be established either by the informer's past record of reliability or by extrinsic facts proving his information reliable. *Pawloski v. State, supra.* Various facts have been held to establish the credibility of the person supplying the information. Victims of the crime have generally been regarded as reliable informers. *Pawloski v. State, supra; Mann v. State,* (1979) Ind.App., 389 N.E.2d 352. Likewise, cooperative citizens who have witnessed a crime and wish to assist law enforcement have been regarded as reliable. *Pawloski v. State, supra.* In addition, persons making statements which are against their own penal interest have been considered reliable on the ground that persons are unlikely to make such a damaging admission unless true. *United States v. Harris,* (1971) 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723; *Ross v. State,* (1978) 268 Ind. 471, 376 N.E.2d 1117, *cert. denied,* 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 50 (1979). *But see Knaub v. State,* (1979) Ind.App., 394 N.E.2d 201.

With these criteria in mind, the affidavit for a search warrant here must be examined to determine if the statutory requirements are met. That affidavit provided:

"Comes now Drew Wright, Randolph County Deputy Sheriff, and being duly sworn upon his oath swears that he has good cause to believe and believes that on September 16, 1979, at approximately 10:45 p. m., Affiant was informed by William York who resides at Randolph County Road 1000 South, just east of Indian Trial [sic] Road Randolph County, Indiana, that he heard a truck with a loud muffler out at his barn. Upon investigation, Affiant proceeded to the barn of William York and found fresh blood at and around the pig pen. William York informed Affiant that he was missing at least one black and white mixed breed hog, of an estimated value of one hundred fifty dollars ($150.00), which was tagged on the left ear and had three or four rings in the nose. Later during his investigation, at about 12:10 a. m., Affiant was at the intersection of United States Highways 35 and 36 (approximately 4–5 miles from the York residence) and observed a brown pickup truck with a loud muffler. Affiant stopped said pickup truck and saw two recently slaughtered hogs laying in the open rear bed of the pickup truck. Affiant determined the driver of said truck was Nelson E. Dilk and a passenger, his wife, Linda S. Dilk, of Daleville, Indiana. Affiant observed two hogs in the truck, one a black and white mixed breed hog and an all white hog, and that the left ears of the two hogs in the truck had been partially cut off. The Dilks informed Affiant that they had got the hogs from Roy Dunkle who lived on Randolph County Road 400 West.

"Affiant then notified William York, who also told Affiant that another hog had been stolen; William York came to the scene and identified the black and white mixed breed hog, which was the pet of his wife, Betty York, he also identified the white hog.

"Betty York also informed Affiant that the black and white mixed breed hog was pregnant and should be full of piglets.

"Affiant believes that at or about the residence and property of Roy Dunkle located on Randolph County Road 400 West, they will find remains of organs of hogs and parts of two ears with orange tags on said parts of ears, and hog blood. (R. 107 and 108)"

While the affidavit is replete with factual statements implicating the Dilks with the crime of theft, the only statement making reference to Dunkle is the statement that "[t]he Dilk's informed affiant that they had got the hogs from Roy Dunkle who lived on Randolph County Road 400 West." There is absolutely no statement of facts supporting the credibility of either of the Dilks contained in the affidavit. Nowhere is their past record of reliability stated.[2] No extrinsic facts are given which would support their credibility. The Dilks were not the victims of the crime. Their statement is not against their own penal interest, but instead is an attempt to exculpate themselves and place the blame, if any, on Dunkle. Dilks did not state, so far as the affidavit reveals, that they obtained the hogs from Dunkle at Dunkle's residence, that they had seen the hogs there, or that they had witnessed the gutting of the animals at that location. The example given by Prof. Bruce Berner in his article, *Search and Seizure: Status and Methodology*, 8 Val.U.L.R. 471, 497 (1974), is relevant: "So if A tells the police, 'D possesses heroin,' the statement contains no facts indicating A's competency; but if A says 'I saw D place heroin in his pocket,' competency, for this purpose is shown . . . ." (*See also, Mann v. State, supra*, where the owner of hogs, the victim of the crime, observed the hogs on defendant's premises and identified them as his own.) Further, the statement of the Dilks does not establish a factual foundation for the belief that such statements were trustworthy. The credibility of the Dilks has not been established.

I submit also that the statement of the Dilks as reported in the affidavit is totally

2. A statement in an affidavit for search warrant that the informant had given information in the past which proved reliable and led to arrests adequately establishes credibility. *Tinnin v. State*, (1981) Ind., 416 N.E.2d 116.

insufficient to establish probable cause for believing the hog entrails, etc., would be found on Dunkle's premises. Neither of the Dilks so stated, so far as the affidavit reveals, and the affidavit does not state any other facts which establish this fact. (*See McClain v. State*, (1980) Ind., 410 N.E.2d 1297, for an example of other facts in the affidavit establishing credibility of the declarant.) Here, all the other facts in the affidavit are related to the Dilks and their involvement in the crime. None of the other facts point to Dunkle. Certainly the incriminating circumstances as to the Dilks cast suspicion upon their credibility, *Pawloski v. State, supra*, and render them unreliable absent other corroborating facts.

In addition, when determining whether the facts stated in the affidavit support a finding that the informant is credible the court may not look beyond the affidavit itself. *Knaub v. State, supra*.[3] Likewise, the determination of probable cause must be made from the factual information on the face of the affidavit, *Layman v. State, supra*, that being the only evidence presented here to support issuance of the search warrant. The fruits of the search can never be used to justify a search. The right to issue a search warrant depends upon the facts existing at the time the showing is made for issuance of the warrant. *Ferry v. State*, (1970) 255 Ind. 27, 262 N.E.2d 523; *Ashley & Taylor v. State*, (1968) 251 Ind. 359, 241 N.E.2d 264. Thus, the deficiencies in the affidavit here cannot be supplied by evidence of what was found in the search.

If the basis for the search warrant, whether affidavit or testimony, does not provide a sufficient foundation for finding probable cause, the warrant is defective and evidence seized and obtained through the warrant is inadmissible at the trial. *McClain v. State, supra; Layman v. State, supra*. Since neither the credibility of the Dilks nor a factual basis for determining probable cause were established by the affidavit, it was insufficient and the warrant issued pursuant to such affidavit was defective. Here, a proper motion to suppress

**3.** No evidence in addition to the affidavit was presented under IC 35-1-6-2(c).

and proper objections to the evidence were made. Thus, admission of the evidence was error. Further, admission of such evidence was clearly prejudicial in view of the conflicts in the evidence and questions of credibility involved. I would reverse the judgment and grant a new trial.