**Milton David JARVIS, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 481S96.

Supreme Court of Indiana.

Oct. 26, 1982.

Donald E. Transki, Michigan City, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of murder in the First Degree, Ind.Code § 35–13–4–1 (Burns 1975), and sentenced to life imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred in over-ruling Defendant's motions for a continuance and for a mistrial.

(2) Whether the trial court erred in not granting a mistrial in response to the Prosecutor's comments during his opening statement.

(3) Whether the trial court erred in admitting four photographs of the victim into evidence.

(4) Whether the trial court erred in admitting a photographic array into evidence.

(5) Whether the trial court erred in allowing an accomplice to relate evidence of other unrelated crimes.

(6) Whether the trial court erred in limiting Defendant's cross-examination of the accomplice.

(7) Whether the trial court erred in allowing a State's witness to read a deposition to the jury.

(8) Whether the trial court erred in allowing a witness to testify.

(9) Whether the trial court erred in refusing to examine the jurors to determine if they had been exposed to publicity about the trial.

* * * * * *

## ISSUE I

Before the beginning of the second day of jury selection, the parties met in the trial court's chambers. Defendant presented Exhibit A, a page of August 26, 1980 Michigan City News-Dispatch which contained two articles. One entitled, "Jury surprised by result of 'tossup' verdict" lies directly above another entitled, "Jury selection under way in murder trial." The first article contained quotations of one Blumenfeld who had sat as a juror in the prior case and who was also on the panel in the case before us, which was the subject of the second article. Defense counsel also stated to the judge that the case had been mentioned on a radio station that morning. Defendant requested a continuance to obtain "an exact copy of what had been recited over the radio * * *" and moved for a mistrial "* * * for the publicity that I think has already affected our ability to get a fair and impartial jury in the trial of this cause." After hearing from the State, the trial court removed Blumenfeld for cause

and examined the prospective jurors to determine if any of them had been exposed to the News-Dispatch article, to an article in the LaPorte Herald-Argus, or to the radio broadcast. Defendant was also allowed to examine the prospective jurors.

The prospective jurors fell into two groups, those who had been in court the day before and had been admonished and those who had arrived for the first time that morning and consequently had not been admonished.

The admonished group consisted of ten persons, who were examined individually by the trial court and defense counsel. Six had neither seen either of the articles nor heard the broadcast, two had seen only the News-Dispatch article but had deliberately avoided reading it, in obedience to the admonition; and two others were excused for cause based upon their responses.

The unadmonished group consisted of four prospective jurors, Nicholson, Rhodes, Dickey, and Wade. Juror Wade had seen only the article in the Herald-Argus and when asked if he had formulated an opinion about the case he responded, "Well, it sounded pretty cut and dried as far as I was concerned." He was promptly excused. Defendant did not object at that time, even though the other three jurors had heard the comment. Shortly thereafter, during the examination of Juror Nicholson, the State approached the bench, and thereafter, the trial court examined the prospective jurors individually rather than as a group. Juror Dickey had seen only the Herald-Argus article and had heard the radio broadcast and was excused. Juror Rhodes had skimmed only the News-Dispatch article but did not remember any of it. *See Davis v. State,* (1979) Ind.App., 397 N.E.2d 301, 303. The trial court asked her about Juror Wade's comment to which she replied, "Just seemed kind of unfair for him to say it." Juror Nicholson had read only the News-Dispatch article. Defense counsel questioned her about her recollection of the article, which recollection was vague.

■ Defendant then sought a continuance in order to obtain the texts of the Herald-Argus article and the radio broadcast. However, the prospective jurors who had, at that time, been exposed to these items were excused, thus, there was no need for the information at that time; hence the need for a continuance was speculative, at best.

■ Defendant's initial motion for a mistrial was premature. The trial court could not possibly have known about the prospective jurors' exposure to news reports until he examined them. *Lindsey v. State,* (1973) 260 Ind. 351, 357, 295 N.E.2d 819, 823 (quoting with approval from *Harris v. State,* (1967) 249 Ind. 681, 694–95, 231 N.E.2d 800, 807).

When Defendant renewed the motion after the examination, he changed his grounds:

" * * * Further, in my motion for mistrial, I think this jury is so badly contaminated now by what has happened that it is going to be impossible to select a jury for the trial of this cause. * * *." (R. at 348)

Defendant's comments referred to Juror Wade's comment as evidenced by the following:

"MR. TRANSKI: Your Honor, I think all these people that were here when this gentleman said it's a cut and dried case are contaminated and should not be on the panel." (R. at 352).

■ Jurors Nicholson and Rhodes had seen the News-Dispatch article but not the Herald-Argus article. Juror Wade's conclusion was drawn from reading the Herald-Argus article. Consequently, Jurors Nicholson and Rhodes did not know the basis for Juror Wade's statement, and nothing in the record shows that they were influenced by it. The burden was upon Defendant to show that Nicholson and Rhodes could not remain impartial after hearing Wade's comment or reading the News-Dispatch article. *Irvin v. Dowd,* (1961) 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751, 766; *Atkinson v. State,* (1980) Ind.App., 411 N.E.2d 651, 653. He did not ask Nicholson or Rho-

des any question similar to that posed by the trial court which drew Juror Rhodes' aforementioned response, "Just seemed kind of unfair for him to say it."

The selection of the jury continued with an additional group of prospective jurors. Of this group, only three who had been exposed to the reports served, Jerndt and Iler who served as alternates, and Vankosky, who served as a regular. Defendant has not indicated that either of the alternates participated in the deliberations.

Under questioning, alternates Isler and Jerndt stated unequivocally that they would not be influenced by what they had read or heard; and Juror Vankosky stated that he had read the Herald-Argus article but did not remember its contents.

After the examination of the additional prospective jurors, Defendant again renewed his motions for a continuance and a mistrial, both of which were denied. The record discloses nothing which merited the grant of either a mistrial or a continuance. *Drollinger v. State,* (1980) Ind., 408 N.E.2d 1228, 1234–35.

## ISSUE II

Prior to trial, the trial court granted Defendant's motion in limine as follows:

" * * * the court now grants that motion to the effect that the State of Indiana is not to mention, refer to, interject or attempt to convey to the jury in any manner, directly or indirectly, the fact the defendant in the case, Milton David Jarvis, had committed prior crimes, without first obtaining permission from the court out of the presence and hearing of the jury to discuss the introduction of any such evidence. * * *." (R. at 99)

During his opening statement, the Prosecutor mentioned that the evidence would show that on November 8, 1976 Ronald Griffin and his partner, the defendant, began to travel the interstate highways. He explained that the two ran a scam at automobile service stations, for some fourteen (14) months, in which one would divert the attention of the attendant and the other

would steal the money. In the case at bar the scam had not worked, and had resulted in the attendant's murder. Defendant, making no objection at that time, allowed the Prosecutor to finish his opening statement and then moved for a mistrial on the ground that the state had violated the aforementioned motion in limine. The trial court took the matter under advisement and after a colloquy about the admissibility of this asserted evidence of other crimes, determined that the evidence would be admissible and that the violation of the motion in limine was, therefore, harmless error. The court also admonished the Prosecutor to seek its permission before bringing the evidence into trial.

The granting of Defendant's motion in limine was not a final ruling upon the admissibility of the evidence it covered. *Lagenour v. State*, (1978) 268 Ind. 441, 450, 376 N.E.2d 475, 481. Thus, if the evidence were admissible at trial, as we find in Issue V, infra, the Prosecutor's comments were harmless error. *Cf. Bennett v. State*, (1981) Ind., 423 N.E.2d 588, 591 (denial of a motion in limine does not constitute error unless prejudice is occasioned thereby).

### ISSUE III

■ Under this heading, Defendant combines two issues concerning his objections to the admission into evidence of four color photographs of the victim, State's Exhibits 1, 2, 3 and 7. Exhibits 1, 2 and 3 show the wounds inflicted upon the victim. Exhibit 7 depicts the body of the victim as it was found in the service station washroom. Defendant contends that these pictures aroused the passions of the jury. He adds that he offered to stipulate to whatever could be proved by the photographs.

At trial, when Exhibits 1–3 were offered, Defendant offered to stipulate that the victim had died of "gunshot wounds to the head and torso." The State noted that the photographs accompanied by the pathologist's testimony established facts about the nature of the wounds and the circumstances of the shooting. These facts tended to corroborate the accomplice's testimony. De-

fendant offered to stipulate to these additional facts and the trial court stated:

"THE COURT: If there is going to be a stipulation it should be drafted in writing and both of you agree to it before I read it to the jury." (R. at 498).

The court recessed for five minutes and then resumed with the continuation of the direct examination of the pathologist. The record does not contain a stipulation upon the subject or an objection to the trial court's requirement that such stipulation be in writing. The four photographs, though unpleasant to view, were relevant and admissible to show the cause of death and the nature of the wounds and thereby corroborate the accomplice's testimony. *Loy v. State*, (1982) Ind., 436 N.E.2d 1125 (cases cited therein).

### ISSUE IV

■ Defendant next assigns error to the admission of State's Exhibit 14, an array of eight (8) black and white photographs from which a State's witness had selected a photograph of the accomplice. The witness had gone to the service station, on the day of the offense, to complete a job application and had been there for fifteen or twenty minutes. He returned when he heard on the radio later that day that police cars were there. Defendant and the accomplice had been at the station at the same time as the witness. Since the defendant had a beard and the accomplice was clean shaven, the witness was shown two separate sets of photographs. From the bearded group, State's Exhibit 13, the witness identified the defendant, and from the clean shaven group, State's Exhibit 14, the witness identified the accomplice. The Exhibit was accepted into evidence, over the following noted objection, during the direct examination of the police officer who had displayed the photographs:

"MR. TRANSKI: Objection. I can see no relevancy or materiality to the photographs of the clean shaven individuals that includes the picture of Ronald Griffin. He's not on trial in this case." (R. at 602)

Thereafter the identifying witness related his pre-trial identifications of both Defendant and the accomplice without objection. Thus, evidence having the same probative value as the photographs was admitted without objection, and Defendant has shown no reversible error. *Bobbitt v. State,* (1977) 266 Ind. 164, 174, 361 N.E.2d 1193, 1199 (no error in admission of photographs of automobile where Defendant made no objection to testimony regarding the automobile).

### ISSUE V

■ Defendant next contends that the trial court erred in allowing the accomplice to testify concerning a scheme that he and Defendant had concocted to commit thefts from service stations. Defendant and the accomplice had used the scheme some thirty times over a two year period, and an unsuccessful attempt resulted in the charged homicide.

"Generally, evidence of criminal activity other than that charged is inadmissible on the question of guilt. However, such evidence may be admitted to show intent, motive, purpose, identification, or common scheme or plan." *Cobbs v. State,* (1975) 264 Ind. 60, 62, 338 N.E.2d 632, 633. The testimony at issue evidences the common criminal scheme that Defendant and the accomplice used only at automobile service stations and circumstantially tended to prove the perpetrator's identity. *Foresta v. State,* (1980) Ind., 413 N.E.2d 889, 891; *Smith v. State,* (1939) 215 Ind. 629, 635, 21 N.E.2d 709, 711–12; *Alexander v. State,* (1976) 167 Ind.App. 688, 692, 340 N.E.2d 366, 368.

### ISSUE VI

■ Defendant next contends that the trial court erred in limiting his cross-examination of the accomplice:

"Q. I see by the record you were arrested on October 30, 1963 in Fort Worth, Texas.

"MR. BRAJE: Your Honor, I object to this line of questioning. Improper to go into this record." (R. at 690)

Out of the jury's presence Defendant offered to prove that the accomplice had been arrested twenty-one (21) times in five states. Defendant claims that this line of questioning is similar to that attempted in *Bryant v. State,* (1954) 233 Ind. 274, 277, 118 N.E.2d 894, 895–96, where we reversed the conviction. In Bryant the accomplice was not permitted to answer a question concerning his arrest for the crime for which the defendant was on trial. In the case at bar, the arrests are all collateral to the charged offense. Additionally, while Defendant subsequently cross examined the accomplice about his prior convictions, he made no attempt to prove that any of the twenty-one arrests had resulted in a conviction. Prior arrests which do not result in a conviction are not admissible for purposes of impeachment. *Chambers v. State,* (1979) Ind., 392 N.E.2d 1156, 1160; *Bryant v. State,* (1973) 261 Ind. 172, 180–81, 301 N.E.2d 179, 184; *Dunkle v. State,* (1981) Ind.App., 425 N.E.2d 185, 187. We find no error in the trial court's ruling.

### ISSUE VII

Defendant next contends that the trial court erred in allowing a State's witness to read the deposition of one Elaine Vanucci into evidence because the deposition had not been filed pursuant to Ind.R.Tr.P. 30(F)(1) (in pertinent part):

"* * * He shall then securely seal the deposition in an envelope indorsed with the title of the action and marked 'Deposition of (here insert name of witness)' and shall promptly file it with the court in which the action is pending or send it by registered or certified mail to the clerk thereof for filing."

In response to Defendant's objection the trial court noted that the original of the deposition, which had been taken upon Defendant's order, had not been processed and forwarded to the trial court because the court reporter had not been paid. Nevertheless, he relied upon Ind.Code § 34–1–16–2 (Burns 1973) to accept a certified copy of the deposition for publication.

 The admission of a deposition into evidence is reviewable only for an abuse of discretion. *Thomas v. State,* (1981) Ind.App., 423 N.E.2d 682, 689. The record shows that defense counsel was present at the taking of the deposition and may have been responsible for the failure to file. Under Federal Rule of Civil Procedure 30(f), which is similar to Ind.R.Tr.P. 30(F)(1), "The failure to promptly file is harmless where the adverse party saw the deposition prior to trial." *McVay v. Cincinnati Union Terminal Co.,* (6th Cir. 1969) 416 F.2d 853, 856. Defendant does not challenge the accuracy of the deposition's contents, and the record shows, at the very least, that defense counsel heard the testimony contained in the deposition prior to trial; consequently, we find no error in the trial court's ruling.

## ISSUE VIII

Defendant objected to the admission of the testimony of witness, Brown, upon dual grounds, contending that it was an impeachment of the depositional testimony of Elaine Vanucci without a proper foundation therefor having been lain and that there had been no prior disclosure as was required by the court's discovery order. The evidence was not excludable upon either basis.

 Vanucci had testified in her deposition that Defendant had been with her on November 4 and 5, 1976, and left for Texas on the 5th, the homicide having occurred on November 4th. She further testified that she remembered this with reference to his having accompanied her to her bank, on November 5th, where she withdrew the sum of $500.00, which she gave to him. Upon cross examination, she acknowledged that if she were mistaken about the date upon which she withdrew such funds from the bank, she would be in error in her testimony that he left for Texas on the 5th.

By the witness, Brown, State's Exhibit 15 was identified and introduced into evidence. It was the bank's record of Vanucci's bank account and disclosed that the only withdrawal of $500.00 had occurred, not upon November 5th but upon November 30th. There was, then, no impeachment of any witness. The bank record simply completed the picture and revealed, not that Vanucci had not necessarily testified falsely but that she may have been in error when she testified that the withdrawal and Defendant's departure occurred on the same day. This, of course, diminished the weight of her testimony that she and the defendant were together on the 4th and 5th, but it did not impeach it.

 With regard to the failure of the prosecutor to disclose the identity of witness Brown, the record reveals that he had, immediately upon receiving a copy of the bank statement, disclosed it to defense counsel and explained the use to which he intended to put it.

## ISSUE IX

The trial commenced on August 25th and State's evidence was presented through the close of August 28th. When court convened on the morning of the 29th, the defendant introduced copies of newspaper articles published on the four preceding days, requested the court to interrogate the jury to determine if any of its members had been exposed to the articles and also asked that the jury be sequestered during the remainder of the trial. Both motions were overruled.

 With regard to the motion to sequester, the trial was completed on the 29th, and there is no indication in the record or briefs that the jury separated subsequent to its convening on the 29th. The ruling upon the motion to sequester, therefore, is moot.

 With regard to the motion to interrogate the jury, the authority cited by Defendant, *Liddle v. State,* (1973) 260 Ind. 548, 297 N.E.2d 801, does not support his position. That case requires such action by the court only if there has been presented some basis for a reasonable belief that one or more of the jurors has been exposed to potentially harmful publicity. The case

does not suggest that the court is required to initiate an inquiry as a "fishing expedition."

"Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both *upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror.* If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collectively to determine who, if any, has been exposed." *Lindsey v. State,* (1973) 260 Ind. 351, 358–59, 295 N.E.2d 819, 824.

Included among the allegedly objectionable newspaper articles were those hereinbefore discussed under Issue I. The court had already taken appropriate action to assure that jurors would not be influenced by those articles, and there was no reason to assume that any of the jurors had disregarded the admonishments not to read newspaper accounts. Further, none of the other articles contained objectionable matter.

In *Lindsey v. State, supra,* we said "At all stages, the trial court must have discretion to make the determination, within the context of the particular circumstances; *and a denial of a motion to interrogate will be reversible error, only if we can say that there has been substantial peril." Id.,* at 359, 295 N.E.2d at 824. (Emphasis added) Defendant's motion to interrogate the jury was not supported by any showing of a substantial risk of prejudice and was, accordingly, properly denied.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.