James RIDENOUR, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 29A04–9307–CR–268.

Court of Appeals of Indiana,
Fourth District.

Aug. 15, 1994.

Timothy P. Alcorn, Christian, Waltz, White Klotz & Pfleging, Noblesville, for appellant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

RATLIFF, Senior Judge.

## STATEMENT OF THE CASE

James Ridenour appeals from his conviction of child molesting and battery.

We affirm.

## ISSUES

I. Did Ridenour have a constitutional right to have an attorney present at his initial hearing?

II. Was Ridenour denied a fair trial because the jury overheard conversations between Ridenour and his trial counsel?

III. Was Ridenour denied a fair trial because the trial judge failed to question members of the jury regarding possible conversations with a juror who was excused during the pendency of the trial?

IV. Did the trial court err by admitting into evidence tape recorded statements of two of the victims?

V. Did the trial court err in imposing a ninety-two year sentence?

1. Ind.Code 35–42–4–3(a).

## FACTS

Thirty year-old James Ridenour and his wife Diane lived together in Carmel, Indiana with their four children: D., J.R., J., and H. In October 1990, Diane reported to Susie Watson, a social worker for the Hamilton County Department of Welfare, that Ridenour had physically abused the children. Diane then questioned nine year-old D. as to whether her father had ever touched her improperly. D. responded affirmatively. Later, five year-old J. voluntarily told Diane that her father had touched her. Diane then reported these incidents to Susie who met with each of the four children individually on December 6, 1990, and she tape recorded the statements of D. and J. In the tape-recorded interview statements and at trial, both D. and J. described the sexual acts Ridenour performed upon them. D. described how Ridenour forced her to perform fellatio, sexual intercourse, and anal intercourse. Additionally, she stated that Ridenour licked her private parts. J. described how Ridenour placed his finger inside her.

At trial, where Ridenour neither testified nor presented witnesses, a jury convicted him of four counts of child molesting, a class B felony,[1] against D., and one count of child molesting against J. He was also convicted of one count of battery, a class D felony,[2] against J. Ridenour received an eighteen year sentence for each count of child molesting and a two year sentence for the battery count. The court also ordered that each sentence be served consecutively for a total of ninety-two years.

## DECISION

### I. INITIAL HEARING

At his initial hearing, held the day following his arrest, an attorney was appointed to represent Ridenour. The judge advised him of his rights and entered a preliminary plea of not guilty.

Ridenour now argues that his constitutional rights have been violated because he did not have an attorney *present* at the "arraignment." Specifically, he alleges he was prejudiced since he had "no opportunity to consult

2. Ind.Code 35–42–2–1(2)(B).

with counsel during the beginning stage of his case, facts, pertinent witnesses or right to defenses may have been forgotten or lost.... Appellant's Brief, p. 10. In support of his claim, Ridenour relies on *Darmody v. State* (1973), 156 Ind.App. 88, 294 N.E.2d 835, 839, wherein this court held that "[t]he law is now settled that at the arraignment, the accused has a constitutional right to the assistance of counsel."

■ However, Ridenour's reliance is misplaced because he incorrectly characterizes the hearing he attended as an "arraignment," when, in fact, it was an initial hearing.

Arraignment, under the prior statutory scheme, was construed as a crucial step in the course of criminal proceedings since it was at that juncture that the accused heard the formal charge and was called upon to enter his plea. *Rader v. State* (1979), 181 Ind.App. 546, 550, 393 N.E.2d 199, 202. However, under the new scheme, there is no technical arraignment hearing. Johnson, *Criminal Law and Procedure*, 16 Ind.L.Rev. 119, 132 (1983). Instead a defendant is advised of the charge against him at the initial hearing and an automatic not guilty plea is entered on his behalf. The preliminary not guilty plea becomes a formal plea of not guilty twenty (20) days after completion of the initial hearing if the crime charged is a felony.

*Hayre v. State* (1986), Ind.App., 495 N.E.2d 550, 552. Thus, an initial hearing is not a critical stage of the process requiring presence of counsel, *Benner v. State* (1991), Ind., 580 N.E.2d 210, 212, and, therefore, Ridenour's constitutional right to counsel was not violated. Neither has he demonstrated prejudice. Upon proof of his indigency, the judge appointed counsel and further entered a preliminary plea of not guilty. Ridenour was not called upon to use his discretion or to make any type of decision that would require an attorney's advice.

## II. WAS RIDENOUR DENIED A FAIR TRIAL BECAUSE THE JURY OVERHEARD CONVERSATIONS BETWEEN RIDENOUR AND HIS COUNSEL?

■ Ridenour's allegation that he was denied a fair trial rests on the following assertion: "The trial court and counsel were informed by the bailiff that members of the jury could overhear conversations between Defendant and his counsel." Appellant's Brief p. 7. He makes no citation to the record, and, after an exhaustive search of the record, we are unable to locate any communication by the bailiff to either the trial court or counsel indicating that the jury overheard conversations between Ridenour and his attorney. Thus, it is impossible to ascertain whether Ridenour was denied a fair trial, and, in any case, bare assertions of error not disclosed by the record are not available for review. *Wray v. State* (1989), Ind., 547 N.E.2d 1062, 1068.

## III. WAS RIDENOUR DENIED A FAIR TRIAL BECAUSE THE TRIAL COURT FAILED TO QUESTION JURORS REGARDING CONVERSATIONS THEY MAY HAVE HAD WITH AN EXCUSED JUROR?

Before the trial began on the third day, Juror Brown privately revealed to the judge her concern that she was biased in favor of the State. Out of the presence of the jury, she was then questioned by the prosecutor and Ridenour's attorney concerning her ability to serve as an impartial juror. Her testimony revealed that the girls' testimony the previous day had reminded her of an incident of child molestation that had occurred in her family. Although she was disturbed, Brown felt she could remain impartial until she received a phone call that night from her daughter who related an unsettling incident. She testified that because she was unable to discuss the dilemma with anyone, she was awake nearly all night and by the next morning had concluded that she was unable to remain impartial. Thereafter, Ridenour moved to excuse Juror Brown and to seat the alternate juror. The State had no objection and the trial court granted Ridenour's motion. Before trial commenced that day, the trial court admonished the jury as follows:

Ladies and gentlemen, the Court has excused Mrs. Brown from the jury and Mr. Barta will move from the alternate juror to

be one of the twelve jurors. You should not speculate on this situation. It should have no impact whatsoever or be discussed in your deliberations.

R. 1008.

Ridenour now argues he was denied a fair trial because the trial court failed to interrogate the remaining jurors to determine whether they were exposed to prejudice through conversations they may have had with Juror Brown concerning her experiences.

In *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819, our Supreme Court enunciated the procedure a trial court must follow when a jury has potentially been exposed to prejudicial publicity during trial. While *Lindsey* involved factually incorrect newspaper articles published during trial, the *Lindsey* procedure has been applied to a variety of situations where potentially improper juror influence exists. *See Conn v. State* (1989), Ind., 535 N.E.2d 1176 (insurance claim for medicines carrying juror's name brought to trial court's attention during trial for delivery of a controlled substance); *Gee v. State* (1979), 271 Ind. 28, 389 N.E.2d 303 (juror's conversation on a public telephone during trial recess); *Bruce v. State* (1978), 268 Ind. 180, 375 N.E.2d 1042, *cert. denied.* (audience discussion overheard by jurors); *Daniels v. State* (1976), 264 Ind. 490, 346 N.E.2d 566 (juror's wife threatened by victim's mother).

The *Lindsey* procedure provides in pertinent part:

Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of content of the publication and the likelihood of its having come to the attention of any juror. *If the risk of prejudice appears substantial, as opposed to imaginary or remote only,* the court should interrogate the jury collectively to determine who, if any, has been exposed. If there has been no exposure, the court should instruct upon the hazards of such exposure and the necessity for avoiding exposure to out-of-court comment concerning the case. If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof. After each juror is so interrogated, he should be individually admonished. After all exposed jurors have been interrogated and admonished, the jury should be assembled and collectively admonished, as in the case of a finding of 'no exposure.' If the imperiled party deems such action insufficient to remove the peril, he should move for a mistrial.

*Lindsey, supra* 295 N.E.2d at 824 (emphasis added). The court is required to act only if there has been presented some basis for a reasonable belief that one or more of the jurors has been exposed to potentially harmful publicity. *Jarvis v. State* (1982), Ind., 441 N.E.2d 1, 7. The court is not required to initiate an inquiry as a "fishing expedition." *Id.* *See also Liddle v. State* (1973), 260 Ind. 548, 297 N.E.2d 801, 802. Because the trial court did not examine the remaining jurors as to conversations they may have had with Juror Brown, we are concerned with the threshold determination of whether a substantial likelihood of prejudice exists, such as requires the trial court to make further inquiry into the matter. *Bruce, supra* 375 N.E.2d at 1067. *See also Threats v. State* (1991), Ind.App., 582 N.E.2d 396, 400.

Here, there is no evidence that Juror Brown discussed her problem with other jury members. Indeed, she testified that her dilemma was compounded by the fact that she was unable to discuss it with anyone. Further, there is no evidence that she even came into contact with any of the other jurors on the morning she determined she was incapable of remaining impartial. The evidence reveals that before trial started, she sought the counsel of the judge, was interrogated and discharged. Thus, absent a basis for believing that the jury may have been subjected to improper out-of-court stimuli, there is no need to employ the procedure outlined in *Lindsey*. *Worthington v. State* (1980), 273 Ind. 499, 405 N.E.2d 913, 916, *cert. denied.*

Moreover, even if Juror Brown had discussed her problem with other jurors, Riden-

our has failed to show why Brown's experience could have prejudicially tainted the jury any more than a juror's general awareness of child molestation. The first of Brown's problematic incidents involved her daughter and a family member other than the girl's father. The second incident, which came to light on the evening of the second day of trial, involved a second daughter and her college roommate. Neither incident is similar to Ridenour's case. "It is unrealistic and impossible to expect or require that a jury be a laboratory completely sterilized and freed from all external factors." *Lindsey, supra* 295 N.E.2d at 823 (quoting Sharp, J.). Further, during preliminary instructions, the trial court instructed the jury to refrain from discussing the case with each other, to report to the court any such attempt, and to base its verdict solely on the evidence presented in court. R. 159. The jury was reminded of their duties each time the court recessed, and there is no evidence to suggest that the jury failed to follow these instructions.

Finally, the trial court admonished the jury to disregard Juror Brown's release and instructed it to refrain from allowing her release to have an impact on its deliberations. R. 1008. The trial court's action comports with the remedial procedure suggested by this court in *Threats, supra* at 401, to ensure that the verdict is free of improper influence. In *Threats,* during deliberations, the jury foreman revealed that he knew the defendant's wife. Jurors reported to the bailiff that the foreman had an interest in the case, and he was eventually released from duty and replaced by an alternate. However, the trial court neither questioned the jury as to possible prejudice, nor admonished the jury. This court suggested that at a minimum, based on the *Lindsey* requirements, the trial court should have "firmly instructed the entire jury to disregard the removal of [the foreman] and to reach a verdict based strictly on the evidence." *Id.*

There is no evidence that the jury was exposed to Juror Brown's personal experi-

ence with child molestation, and, therefore, we cannot say that Ridenour was exposed to a substantial risk of prejudice or that he was denied a fair trial. The trial court did not err in failing to interrogate the remaining jurors.

## IV. DID THE TRIAL COURT ERR IN ADMITTING TAPE–RECORDED STATEMENTS OF TWO OF THE VICTIMS?

On direct examination, D. and J. described in detail the sexual acts Ridenour performed upon them. Each girl also admitted giving essentially the same information to Susie Watson, a child welfare caseworker, and further stated that their interviews with Susie had been tape-recorded. On cross-examination, Ridenour's attorney questioned D. about her answers to deposition questions. D. conceded, both at trial and in her second deposition, that she and her foster-mother read through the first deposition and changed D's responses to several material questions. Ridenour's attorney then meticulously reviewed several of those questions and read through both D.'s original answers and the changes. D. also conceded her trial testimony differed from her original responses. D. was then excused by the trial court. R. 924. Ridenour's attorney elicited similar testimony from J., after which the trial court stated: "J. we're all finished. You can step down and go now." R. 988. Ridenour did not cross-examine either girl with respect to the tape-recorded statements they had given to Susie.

Thereafter, Susie testified that she had interviewed D. and J. and tape-recorded their interviews. The State then offered as evidence the tape-recorded statements, which were made before the depositions, as prior statements consistent with the girls' trial testimony under *Modesitt v. State* (1991), Ind., 578 N.E.2d 649. In the interviews, the girls gave detailed accounts of Ridenour's sexual acts which closely track their trial testimony.[3] Ridenour now claims the court erred in

---

**3.** Ridenour asserts that only portions of the taped statements were played to the jury. He argues that since the portions of the tapes played were not transcribed, the prior statements were made out of context and were, therefore, prejudicial.

Appellant's Brief at 15. However, a careful reading of the record indicates that, at Ridenour's request, the trial court excised only one line, which referenced a collateral issue, from

admitting the tape-recorded interview statements because the girls were not available for cross-examination. We disagree.

We first note that Ridenour did not raise this argument at trial. Rather, he objected to the introduction of the girls' tape-recorded statements on the grounds that the statements were not consistent with their trial testimony and that he had not implied that their trial testimony was recently fabricated.

A defendant may not state one reason for an objection at trial and then rely upon another on appeal. *Ingram v. State* (1989) Ind., 547 N.E.2d 823, 829. When a defendant does not properly bring an objection to the trial court's attention so that the trial court may rule on it at the appropriate time, he is deemed to have waived that possible error. *Id.* Moreover, grounds not raised in the trial court are not available on appeal. *Id.* Ridenour has, therefore, waived this issue.

Waiver notwithstanding, in *Modesitt, supra,* our Supreme Court adopted Federal Rule of Evidence 801(d)(1) governing the admissibility of prior statements as substantive evidence.[4] Specifically, the *Modesitt* court held:

> In balance, we hold that, from this point forward, a prior statement is admissible as substantive evidence *only if the declarant testifies at trial and is subject to cross examination concerning the statement, and the statement is* (a) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition, or (b) *consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive,* or (c) one of identification of a person made after perceiving the person.

D.'s statement. R. 1097–1100. Thus, Ridenour's argument is without merit.

4. Federal Rule of Evidence 801(d)(1) was recently adopted as Indiana Rule of Evidence .801(d)(1).

5. Ridenour also argues that the girls' prior statements are inadmissible because they were not

*Id.* at 654 (emphasis added). Thus, if the declarant can be cross-examined about the statement and the statement fits either (a), (b), or (c) above, the statement is admissible.[5] *Moran v. State* (1992), Ind.App., 604 N.E.2d 1258, 1261, *trans. denied.*

In *Moran,* this district addressed an issue similar to that now raised by Ridenour. There, the Victim gave a prior consistent tape-recorded statement to a caseworker, who was not at trial, which was admitted during the testimony of Susie Watson, the child-welfare department supervisor. The tape-recorded statement came in after the Victim had testified. On appeal, the Defendant argued that for *Modesitt* purposes the victim was no longer available for cross-examination concerning the statement because she had been excused. We agreed with the Defendant's contention.

The facts in *Moran* are distinguishable, however, from the facts now before us. Here, even though the tape-recorded statements were admitted after the girls were apparently excused, both D. and J. testified on direct examination that they had given tape-recorded statements to Susie Watson. Both girls also admitted that the information contained in the tape-recorded statements was essentially the same as the testimony they had given at trial. Thus, unlike the facts in *Moran,* Ridenour had the opportunity to cross-examine D. and J. concerning their prior consistent statements.

In *Brim v. State* (1993), Ind.App., 624 N.E.2d 27, *trans. denied,* this court found persuasive the United States Supreme Court's analysis of the requirement under Fed.R.Evid. 801(d)(1)(C) that the declarant be "subject to cross-examination concerning the statement." *United States v. Owens* (1988), 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951. The *Owens* court found, for

given under oath. Ridenour's argument is mistakenly based on subpart (a) of Federal Rule of Evidence 801(d)(1), which applies to prior *inconsistent* statements. The tape-recorded interview statements at issue here are prior statements given by D. and J. which are *consistent* with their trial testimony.

purposes of a declarant's assertion of memory loss, that the declarant is "subject to cross-examination concerning the statement" where the declarant is placed on the stand, under oath, and responds willingly to questions. *Id.* at 562–63, 108 S.Ct. at 844. Thus, in *Brim,* despite the fact Declarant asserted a memory loss, this court found that her prior statement, which identified the Defendant as the perpetrator was admissible as either a prior consistent statement to rebut a charge of improper influence (801(d)(1)(B)) or to prove the identity of the perpetrator (801(d)(1)(C)). Our analysis of the admissibility of Declarant's prior consistent statement in *Brim* comports with the 10th Circuit's position in *United States v. Tome* (1993), 10th Cir., 3 F.3d 342, 347, *cert. granted in part,* wherein it held that Fed.R.Evid. 801(d)(1)(C) has the same cross-examination requirement as 801(d)(1)(B). (Victim subject to cross examination concerning her prior consistent statements despite fact that she was unresponsive during portions of cross-examination).

In any case, Fed.R.Evid. 801(d)(1)(B) has been interpreted as not barring the introduction of the prior consistent statement through a witness other than the declarant for the right of cross examination to be exercised. *U.S. v. Montague* (1992), D.C.Cir., 958 F.2d 1094, 1099. Further, a majority of federal circuits have held that 801(d)(1)(B)'s "subject to cross-examination" requirement is satisfied if the declarant had testified and been subject to cross-examination sometime during trial. *U.S. v. West* (1982), 7th Cir., 670 F.2d 675, 687, *Montague, supra. See United States v. Provenzano* (1980), 3rd Cir., 620 F.2d 985, 1001–02, *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129; *United States v. Dominguez* (1979), 4th Cir., 604 F.2d 304, 311, *cert. denied sub nom. Sarmiento v. United States* (1980), 444 U.S. 1014, 100 S.Ct. 664, 62 L.Ed.2d 644; *United States v. Allen* (1978), 9th Cir., 579 F.2d 531, 532, *cert. denied sub nom. Mitchell v. United States,* 439 U.S. 933, 99 S.Ct. 326, 58 L.Ed.2d 329; *United States v. Lanier* (1978), 8th Cir., 578 F.2d 1246, 1255–56, *cert. denied,* 439 U.S.

856, 99 S.Ct. 169, 58 L.Ed.2d 163; *United States v. McGrath* (1977), 2d Cir., 558 F.2d 1102, 1107, *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765.

Here, despite the fact that Ridenour declined to cross-examine D. and J. concerning their prior consistent statements, he clearly was given the opportunity to do so. Therefore, under the circumstances of this case, we find that both girls were subject to cross-examination concerning their prior consistent tape-recorded statements for purposes of *Modesitt* and Fed.R.Evid. 801(d)(1)(B). The trial court did not err in admitting the tape-recorded statements.

## V. SENTENCING

For each of Ridenour's five class B felony child molesting convictions, the trial court sentenced him to the presumptive ten year term plus an eight year enhancement.[6] In addition, for Ridenour's class D felony battery conviction, the trial court sentenced him to the presumptive one and one-half year term plus a six month enhancement.[7] The trial court further ordered each term to be served consecutively for a total of ninety two years. Ridenour now argues that the trial court erred in imposing a ninety-two year sentence upon him.

The trial court's sentencing statement provides in pertinent part:

It is the Court's responsibility at any sentencing to state any mitigating or aggravating factors on which the Court bases its sentence. With regard to Mr. Ridenour's case the Court finds that there is a mitigating factor in that he has no prior history of convictions of delinquency or convictions of crime. The aggravating factors that the Court finds in this case are that the defendant is in need of correctional or rehabilitative treatment that can best be provided by a commitment of the defendant to a penal facility. The next aggravating factor is that the imposition of a reduced or a suspended sentence would depreciate the seriousness of the offense. The next aggravating factor is that these offenses, that those which were committed

6. Ind.Code 35–50–2–5.

7. Ind.Code 35–50–2–7.

in Counts I through V were committed in such a way that it has been epidemiologically demonstrated that there was a risk of transmission of HIV in that they involved the sex organ of one person and the mouth, anus, or sex organ of another person. · There's another aggravating factor in this case that is the emotional harm done to the victims of the offense. The Court was the ... presided over the trial of this case and heard the testimony of D., J., and Ms. Goldfarb that supports this aggravating factor. The next aggravating factor is the defendant's unwillingness or inability to deal with the crime in this case as demonstrated by his flight to the State of Florida. The next aggravating factor being that there was more than one incident with the same victim. That again being supported by the trial testimony in this case. The next aggravating factor is that there are prior acts of violent conduct which, although they were not charged as crimes in criminal court, did come to the attention of the Court. That being the Boone County situations wherein the Court ordered counseling. However, despite that counseling, the violent conduct was repeated. And that's an aggravating factor here too. Finally, the aggravating factor that the defendant was in position of trust with his children. That these criminal acts were performed with his own children who should have been able to look to him for care and protection and were instead violated and victimized. Based on those aggravating factors, the Court imposes sentence of eighteen years on Counts I, II, III, IV, and V. And of two years on Count VI. The Court imposes no fine. *The Court orders that these sentences are to run consecutively to each other....*

R. 1455–9 (emphasis added).

Ridenour first argues that the trial court's sentencing statement is insufficient to support his sentence because the trial court failed to specify its reasons for imposing consecutive sentences.

 A trial court has wide discretion, upon consideration of relevant facts, to increase presumptive penalties, impose consec-

utive sentences, or both. *Tyra v. State* (1987), Ind., 506 N.E.2d 1100, 1103. Sentence enhancement is a separate and discrete decision from the imposition of consecutive sentences. *Lindsey v. State* (1985), Ind., 485 N.E.2d 102, 108. When consecutive sentences are imposed the court must state specific and individualized reasons for so doing. *Id. See Brooks v. State* (1990), Ind.App., 555 N.E.2d 1348, 1351, n. 1. Here, while the trial court articulated numerous aggravating factors as a basis for enhancing each of Ridenour's sentences, it failed to specifically offer a justification for additionally imposing consecutive sentences. In our opinion, however, this error does not necessitate a remand because the decision to enhance the presumptive sentence or to impose consecutive sentences may be based on the same aggravating factors. *Lockard v. State* (1992), Ind. App., 600 N.E.2d 985, 988; *Maynard v. State* (1987), Ind., 513 N.E.2d 641, 643.

In summary, the aggravators identified by the court are: 1) Ridenour is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility; 2) imposition of a reduced or suspended sentence would depreciate the seriousness of the offense; 3) the manner in which the molestations were committed placed Ridenour's daughters at risk of being infected with the HIV virus; 4) the emotional harm done to the girls; 5) Ridenour's unwillingness or inability to deal with the crime as is demonstrated by his flight to Florida; 6) more than one incident occurred with the same victim; 7) prior uncharged acts of violence against his family for which a court ordered Ridenour to attend counseling; 8) despite counseling, Ridenour repeated violent conduct; and 9) Ridenour, as a parent, violated his position of trust.

 At the outset, we note that the first three aggravating circumstances relied upon by the trial court are seemingly improper. A "perfunctory recitation" and conclusive listing of the statutory factors to be considered is not sufficient to afford an adequate review of the appropriateness of the sentence imposed on a criminal defendant. *Robey v. State* (1990), Ind. 555 N.E.2d 145, 152. Here, the first two aggravating factors

appear to be little more than a recitation of two of the statutory aggravators a court *may* consider. Ind.Code 35–38–1–7.1(b). Specifically, the trial court's failure to articulate the facts supporting the finding that Ridenour is need of correctional treatment which can best be provided by a penal facility renders this "aggravating" factor little more than a generalized statutory recitation. To properly enhance Ridenour's sentence by using this factor as an aggravating circumstance, the trial court must explain why Ridenour is in need of *more* correctional treatment.

■■ Similarly, the trial court's determination that a reduced sentence would depreciate the seriousness of the crime is improper unless the court is actually considering reducing the sentence. *Shoup v. State* (1991), Ind.App., 570 N.E.2d 1298, 1306, *trans. denied.* Here, because the sentencing statement fails to reveal that the trial court ever considered a reduction of the presumptive ten-year sentence for child molesting (or the presumptive one and one-half years for battery), reliance upon this factor to aggravate Ridenour's presumptive sentence is improper.

The third aggravating factor listed by the trial court is as follows:

The next aggravating factor is that these offenses, that those which were committed in Counts I through V were committed in such a way that it has been epidemiologically demonstrated that there was a risk of transmission of HIV in that they involved the sex organ of one person and the mouth, anus, or sex organ of another person.

R. 1456–7. This "aggravating" circumstance is a partial recitation of Ind.Code 35–38–1–7.1(b)(8), which provides:

(b) The court may consider the following factors as aggravating circumstances or as favoring consecutive terms of imprisonment:

(8) The person committed a sex crime listed in subsection (e) and:

(A) The crime created an epidemiologically demonstrated risk of transmission of the human immunodeficiency virus (HIV) and involved the sex organ of

one (1) person and the mouth, anus, or sex organ of another person;

(B) The person had knowledge that the person was a carrier of HIV; and

(C) The person had received risk counseling as described in subsection (g).

Initially, we note that the trial court incorrectly stated that counts I through V are covered by this statutory subsection. While Ridenour's conviction for child molestation is a sex offense to which this statute applies, only counts I, II, III and IV involved his sex organ and the mouth, anus, or sex organ of his daughter, D. Count V involved Ridenour's finger and J.'s sex organ. Thus, only counts I, II, III and IV are covered by the provisions of I.C. 35–38–1–7.1(b)(8).

■■ Further, the intent of the legislature is to be gleaned from the statute as a whole and not from any section or portion thereof taken piecemeal. Each part must be considered with reference to all other parts. *State v. Adams* (1992), Ind.App., 583 N.E.2d 799, 801. Here, however, the trial court merely recited subsection (8)(A) from the above-mentioned statute and failed to consider it in reference to subsections (B) and (C). Child molesting is an offense covered by this statute, and, as discussed, Ridenour was convicted of three acts which have been demonstrated to transmit the HIV virus. However, there is no evidence that Ridenour knew that he carries the HIV virus. Neither does the record reveal that Ridenour ever received risk counseling. In fact, there is no evidence that Ridenour carries the HIV virus at all. The trial court has taken subsection (8)(A) out of context and improperly relied upon it as an aggravating circumstance.

■ Although the trial court relied on three invalid factors as a basis to support the imposition of Ridenour's ninety-two year sentence, the remaining aggravating factors are valid. For example, the emotional harm his daughters suffered as a result of Ridenour's criminal behavior is a valid aggravating factor. *Durham v. State* (1987), Ind.App., 510 N.E.2d 202, 204; *Hogan v. State* (1980), 274 Ind. 119, 409 N.E.2d 588, 591. The fact that Ridenour committed other, uncharged, inci-

dents of molestation with the same victim is a valid factor to consider in aggravation. *Durham, supra* at 205. Additionally, the fact that Ridenour violated his parental position of trust with D. and J. is a valid aggravating factor. A "position of trust" by itself constitutes a valid aggravating factor upon which the court could properly enhance Ridenour's sentence. *Middlebrook v. State* (1992), Ind. App., 593 N.E.2d 212, 214. *See also Tague v. State* (1989), Ind., 539 N.E.2d 480, 483; *Mahla v. State* (1986), Ind., 496 N.E.2d 568, 576.

■ In any case, enhancement of presumptive sentences, along with imposition of consecutive sentences, may be supported by a single aggravating circumstance. *Davidson v. State* (1990), Ind., 558 N.E.2d 1077, 1092. *Idle v. State* (1992), Ind.App., 587 N.E.2d 712, 715. Thus, although the trial court's sentencing statement is technically deficient in that it fails to reveal the specific reasons for the imposition of consecutive sentences, on the basis of substance over form, as well as judicial economy, we decline to remand this case. In that light, we find the valid aggravating factors used to enhance Ridenour's sentence are also sufficient to support the consecutive sentences imposed upon Ridenour.

■ Next, Ridenour argues that the trial court's sentencing statement is insufficient to support his sentence because the court failed to weigh the mitigating and aggravating factors. When the trial court imposes sentence, the sentencing statement should include: an identification of the significant aggravating and mitigating circumstances, specific facts and reasons leading the court to find the existence of such circumstances and *an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence.* *Slaton v. State* (1987), Ind., 510 N.E.2d 1343, 1351 (emphasis added).

Here, aside from the numerous aggravating circumstances listed by the trial court, the court also noted a single mitigating factor—the fact that Ridenour had no prior criminal convictions. However, the trial court did not state whether the above-listed aggravating factors outweighed this mitigating factor.

In *Wells v. State* (1991), Ind.App., 568 N.E.2d 558, this court considered a similar sentencing error. In *Wells,* the trial court imposed enhanced and consecutive sentences totaling seventy years. In its sentencing statement, the trial court listed seven aggravating factors and one mitigating factor. The court failed to articulate whether the aggravating circumstances outweighed the mitigating circumstance. This court found no reason to remand the case, however, because the record revealed that the trial court had "thoughtfully evaluated the circumstances, and the aggravating factors it found [were] supported by sufficient evidence." *Id.* at 563. Therefore, this court found no error in the enhancement or consecutive nature of the sentences. *Id. See also Henderson v. State* (1986), Ind., 489 N.E.2d 68. (specificity requirement satisfied and remand unnecessary when judge's sentencing statement imposing enhanced sentence indicated he engaged in evaluation and balancing process but did not articulate his considerations on the record, and the record indicated sentence was not manifestly unreasonable).

■ Thus, while the trial court failed to articulate the required balancing process, we nevertheless find that the record reveals that the trial court did, indeed, thoughtfully evaluate the circumstances, as is evidenced by the fact that the record specifically supports the valid aggravating circumstances relied upon by the trial court.

Moreover, the trial court enhanced each of Ridenour's child molesting sentences by eight years, rather than the ten-year maximum possible enhancement.[8] Thus the facts reveal that the trial court carefully evaluated each aggravating factor and weighed it against the single mitigating factor (Ridenour has no prior convictions) before imposing sentence. Further, we cannot say that Ridenour's sentence is manifestly unreasonable. *See* discussion, *infra.* We find the specificity requirement to be satisfied, and the trial

---

8. Similarly, the trial court enhanced Ridenour's one and one-half year battery sentence by six months, rather than by the maximum possible enhancement of a year and one-half.

court did not err in imposing enhanced and consecutive sentences upon Ridenour.

Next, Ridenour argues that the sentencing statement is insufficient to support his sentence because the trial court failed to consider the goal of rehabilitation. In support of his claim, Ridenour relies on *Smith v. State* (1985), Ind., 474 N.E.2d 71, wherein our Supreme Court considered the imposition of enhanced and consecutive sentences. The *Smith* court cited *Abercrombie v. State* (1981), 275 Ind. 407, 417 N.E.2d 316, 320, for the following proposition:

> Due care must be taken to demonstrate a thorough and thoughtful sentencing decision supported by specific and detailed reasons *and an indication that the court has considered the goal of rehabilitation.*

*Smith, supra* at 73 (emphasis added). We disagree with Ridenour's claim. We find that the following excerpt from the trial court's sentencing statement clearly indicates that the court considered, and discounted, Ridenour's capacity to be rehabilitated:

> The next aggravating factor is that there are prior acts of violent conduct which although were not charged as crimes in a criminal court did come to the attention of the Court. That being the Boone County situations wherein the Court ordered counseling. However, despite counseling, the violent conduct was repeated.

R. 1458. The trial court did not err.

Finally, Ridenour argues that his ninety-two year sentence is manifestly unreasonable. An appellate court will not alter a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the offender and the offense. *Durbin v. State* (1989), Ind.App., 547 N.E.2d 1096, 1100. A sentence is not manifestly unreasonable unless no reasonable person could consider the sentence appropriate. *Reichard v. State* (1987), Ind., 510 N.E.2d 163, 167. Ridenour's sentence was clearly authorized by statute; and, given the facts of this case, we cannot say that a ninety-two year sentence is unreasonable in light of the nature of this offense and the character of this offender.

The trial court is affirmed.

RILEY, J., concurs.

CHEZEM, J. concurs as to issues I through IV, concurs in result as to issue V.