## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 05 2019, 7:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew R. Falk
Hendricks County Public Defender's Office
Danville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Edward L. Taylor,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 5, 2019

Court of Appeals Case No. 19A-CR-793

Appeal from the Hendricks Superior Court

The Honorable Stephenie LeMay-Luken, Judge

Trial Court Cause No. 32D05-1603-F5-31

**Mathias, Judge.**

[1] Following a jury trial in Hendricks Superior Court, Edward L. Taylor ("Taylor") was convicted of Level 5 felony battery against a public safety

officer, Level 6 felony resisting law enforcement, and Class A misdemeanor operating a vehicle while intoxicated. Taylor appeals and argues that the trial court erred by not questioning the remaining jurors to determine whether they were influenced by out-of-court contact an excused juror had with a witness.

We affirm.

## Facts and Procedural History

The facts of this case were set forth in an earlier opinion of this court as follows:

> On March 18, 2016, at approximately 2:30 in the afternoon, Hendricks County Sheriff's Deputy Dan Parrott approached a vehicle stopped along the road in which Taylor, the driver, appeared to be asleep or passed out. The vehicle was running and in gear and Deputy Parrott was unable to rouse the driver by knocking on the window. Deputy Parrott entered the unlocked car, put it in park, and was then able to wake Taylor, who exhibited signs of intoxication. Taylor had a suspended license and an active warrant out of Brown County, Indiana. Sergeant Jennifer Brahaum of the Avon Police Department arrived on the scene and also observed signs of intoxication in Taylor. Taylor failed two field sobriety tests and consented to a chemical test. Sergeant Brahaum transported Taylor to a local hospital for a blood draw.
>
> Once at the hospital, however, Taylor refused the blood draw so Sergeant Brahaum contacted the prosecutor's office to obtain a search warrant. She submitted an affidavit of probable cause and a search warrant was signed by the court at approximately 5:15 p.m. As it was approaching three hours since Deputy Parrott first observed Taylor, [footnote: *See* Indiana Code section 9-30-6-2(c) (requiring a chemical test to be administered within three hours after a law enforcement officer has probable cause to believe a person committed an offense under Indiana Code chapters 9-30-5

or 9-30-15)], the prosecutor's office sent a photograph of the signed search warrant to Sergeant Brahaum's cellphone via email. Sergeant Brahaum advised Taylor she had a search warrant to proceed with the blood draw and Taylor asked to see it. When Sergeant Brahaum showed Taylor the email on her phone, he protested that he needed to see a paper copy of the search warrant. Sergeant Brahaum told Taylor a hard copy of the search warrant would be provided to him or his attorney later. Taylor then refused to cooperate with the blood draw and a scuffle ensued, during which Sergeant Brahaum's thumb was sprained and she received several scratches to her arms. Taylor finally complied and the blood draw was completed at approximately 5:20 p.m.

*Taylor v. State*, 69 N.E.3d 502, 504–05 (Ind. Ct. App. 2017).

[4] As a result of this incident, the State charged Taylor on March 21, 2016 with Level 5 felony battery on a public safety officer, Level 6 felony resisting law enforcement, Class A misdemeanor driving while suspended, and Class A misdemeanor operating a vehicle while intoxicated. Prior to trial, Taylor filed a motion to suppress the blood draw evidence, arguing the electronic copy of the search warrant in Sgt. Brahaum's possession was insufficient. *Taylor*, 69 N.E.3d at 505. The trial court denied the motion to suppress but certified the order for interlocutory appeal. We accepted jurisdiction over the appeal and held that "[a] photograph or PDF of a search warrant transmitted via email is as valid and effective as a paper copy," and that the fact that "Brahaum had only an electronic copy of the search warrant at the time of the blood draw did not violate Taylor's rights because the search warrant was otherwise valid." *Id.* at 507.

[5] A two-day jury trial was held on July 24–25, 2017. During voir dire, the trial court asked the venire if any of them knew Sgt. Brahaum. Juror 3082 responded that she worked in the Avon public school system and had seen Sgt. Brahaum "around town" and had a "passing conversation" with her. Tr. Vol. 2, p. 50. The trial court then asked Juror 3082, "[i]s there anything about knowing or seeing her and seeing her function in that capacity that would make you feel like you could not be fair and [im]partial to both sides?" *Id*. Juror 3082 replied, "Other than I know she's a good officer." *Id*. at 51. The trial court then stated that counsel for both parties could ask Juror 3082 further questions on this matter.

[6] The prosecuting attorney asked the venire if any of them had any prior experiences with law enforcement, and Juror 3082 stated, like the other jurors, that she had a positive view of law enforcement. She also indicated that she previously had multiple interactions with law enforcement, stating, "I've been a victim of crime. I have a friend who's a law enforcement officer. I've been in a car accident, um, a couple times." *Id*. at 55. Neither party moved to strike Juror 3082, and she was seated as a juror.

[7] After the jury was selected and sworn in, the trial court read the preliminary instructions to the jury, which included the following:

> You may discuss the evidence with your fellow jurors, including alternate jurors, during the trial but only in the jury room and only when all of you are present. Even though you are permitted to have these discussions, you must not make a decision about the outcome of this case until your deliberations begin. During

the trial you shall not discuss the case with anyone other than your fellow jurors.

* * *

Finally, our law requires that you not read or listen to any news accounts of the case, and that you not attempt to research any fact, law, or person related to the case. *Your decision must be based solely on the testimony and other evidence presented in this courtroom.* It would not be fair for you to base your decision on some reporter's view or opinion, *or upon information that you acquire outside the courtroom from a source that cannot be challenged or cross-examined by the parties*.

*Id.* at 97–98 (emphases added). The parties then made opening statements, after which the court recessed for lunch.

[8] When the trial resumed, the court informed the parties that Juror 3082 had informed the bailiff that she "may have seen [Sgt.] Brahaum with a bandage on her arm while walking through the school." *Id.* at 110–11. The trial court asked the parties, "So, do you want me to release her or do you want me to keep her? My preference is to keep her. I, I just feel like she's trying to get out of jury service which I don't appreciate." *Id.* at 111.

[9] The trial court then brought Juror 3082 into the courtroom and the following exchange took place between the court, Juror 3082, and Sgt. Brahaum:

THE COURT: Thanks. We'll inquire just to see what's going on. Good afternoon, ma'am. I hope you had a good lunch. Um, I just want to clarify, my bailiff indicated and you had previously during voir dire had indicated you work for the Avon school system and that you recognize the name of Officer Brahaum and

you'd probably seen her walking through the school system. What Tabitha texted me at lunch was that you believe that you may have seen Officer Brahaum with a bandage on her arm maybe around this time period?

JUROR 3082:   Yes.

THE COURT:  Do you have a, I mean obviously, it took a while going through the process for it to kind of ring a bell with you; so do you believe that having seen whatever you saw, even if it's connected to this exact event, do you feel like you can still be fair and impartial to both sides?

JUROR 3082:   That's a tough question to answer.

THE COURT:  Well, it's not a question you get every day, is it?

JUROR 3082:   It's not. Yeah.

THE COURT:  But the bottom line is I, I know Officer Brahaum from my recollection, has not been the school resource officer. Do you know, have you?

SERGEANT BRAHAUM:   I am not a school resource officer per se; however I do do security at the schools.

THE COURT:  Okay, so is it all the schools or just the high school?

SERGEANT BRAHAUM:   All of them, I could be in.

THE COURT:  Okay, my kids don't go to Avon, so, um, if you're preforming security, are you there wandering the halls or are you there at the door? Tell me what you do.

SERGEANT BRAHAUM:   A little bit of everything.

THE COURT:  Okay.

SERGEANT BRAHAUM:   I mean, we don't go into the classrooms or teach or anything, that's up to Sergeant Lewis.

THE COURT: Okay.

SERGEANT BRAHAUM: So, he does all that; but we're walking the halls.

THE COURT: Okay.

SERGEANT BRAHAUM: We're in the lunchroom during-

THE COURT: Okay, so it's fair to say any teacher—

SERGEANT BRAHAUM: Any teacher could have seen me.

THE COURT: —in the school system would have seen you in uniform performing those duties?

SERGEANT BRAHAUM: Yes.

THE COURT: Okay, do you communicate with the teachers?

SERGEANT BRAHAUM: Oh, talk, some of them I've gotten to know a little bit.

THE COURT: Okay.

SERGEANT BRAHAUM: I, I don't her, really.

THE COURT: Okay.

SERGEANT BRAHAUM: So.

THE COURT: Okay, well obviously, if you did, we would know. Because she would, then she would have recognized your name.

SERGEANT BRAHAUM: Right.

THE COURT: So, obviously you don't, um, I will be honest, I think there are many citizens of Hendricks County who, who may or may not give deference to the testimony of a law enforcement officer. What you see on TV elsewhere, I, I don't see on TV from this county. That doesn't mean it doesn't

happen; but it's not getting publicized and I think it would be in this day and age with YouTube and videos, everybody having phone on their cameras (sic) and whatnot. *So, basically, all I'm asking is can you give a fair shake to the State as well as a fair shake to Mr. Taylor? Obviously, you don't know Mr. Taylor. He's not performing security at the school system, uh; but can you give a fair trial to both?*

JUROR 3082: *In, in my honest opinion, I've already kind of formed one (1). And that's, I don't want to be unfair to my fellow jurors also.*

THE COURT: Sure. Sure.

JUROR 3082: Um, *but I have a social acquaintance with one (1) of the officers on the Avon force. I know who Officer Lewis is. I have a great deal of respect for these folks and I, I would be not happy with someone who caused them difficulty. How's that?*

THE COURT: Okay, [defense counsel], do you have any questions for this juror?

[Defense counsel]: No, questions, Judge. Thank you.

* * *

THE COURT: Okay, thank you very much, ma'am. Um, we're going to discuss it and then Tabitha will let you know what's going on. *Don't tell anybody else what's going on. I don't really have a choice but to let her go which is what her goal was from the beginning. So, you would probably agree with me*, [defense counsel]?

[Defense counsel]: *I, I agree.*

THE COURT: Okay.

[Defense counsel]: She just stated to the Court that she's already formed an opinion, so.

THE COURT: Okay, so if you'll have them all come back in and I'll let them know what's going on.

Tr. Vol. 2, pp. 111–14.

[10] The trial court dismissed Juror 3082, and then informed the jury:

> Thank you. Please be seated. Ladies and gentlemen, I hope you had a very pleasant lunch. As you're all filtering in, uh, we have a little bit of an unusual situation. We have a juror who's a teacher in the Avon school system and she was very forthright before. She indicated during voir dire that she recognized Officer Brahaum's name. . . . Um, and so this particular juror, now that we've talked about it a little bit and I've read through the charges, she remembered seeing Officer Brahaum in the hallway having maybe some short conversations with her and in fairness to her, she's not comfortable and she doesn't believe, um, she would be an appropriate juror on this case. After having a conversation with her, with the attorneys present, I agree with her. I think she would be better suited for a different trial where an officer who isn't wandering the school system, wandering meaning doing her job, through the halls of the Avon school system; she would be better suited for another case with different witnesses. And so, ma'am, I'm going to release you. If you need anything for your work, Tabitha can get that for you. This still counts as jury service so thank you for appearing. And to my alternate juror, you are now a regular member of the jury. So, no ifs ands or buts about it. So, thank you very much. With that, we are ready to proceed with the State's case in chief.

*Id*. at 114–15.

[11] At the close of the State's evidence, the trial court granted Taylor's motion for judgment on the evidence on the driving while suspended charge, and at the conclusion of trial, the jury found Taylor guilty on the remaining charges. The

trial court subsequently sentenced Taylor to four years of incarceration. Taylor now appeals.

## Discussion and Decision

[12] Taylor argues that the trial court should have held a hearing in order to ask the remaining jurors whether they had been exposed to Juror 3082's prejudice and admonished the jurors that they should not attach any significance to Juror 3082's removal from the jury.

[13] The right to trial before an impartial fact-finder is a cornerstone of our justice system, and Article 1, Section 13 of the Indiana Constitution guarantees criminal defendants the right to trial by an impartial jury. *Caruthers v. State*, 926 N.E.2d 1016, 1020 (Ind. 2010). The right to an impartial jury is an essential element of due process. *Id.* Therefore, if a juror is biased, he or she must be dismissed. *Id.* (citing *Joyner v. State*, 736 N.E.2d 232 (Ind. 2000)).

[14] Over forty years ago, our supreme court set forth the procedure to be followed when a juror is exposed to improper and potentially prejudicial pretrial publicity, writing:

> Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror. If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collectively to determine who, if any, has been exposed. If there has been no exposure, the court should instruct upon the hazards of such exposure and the necessity for

avoiding exposure to out-of-court comment concerning the case. If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof. After each juror is so interrogated, he should be individually admonished. After all exposed jurors have been interrogated and admonished, the jury should be assembled and collectively admonished, as in the case of a finding of 'no exposure.' If the imperiled party deems such action insufficient to remove the peril, he should move for a mistrial.

*Lindsey v. State*, 260 Ind. 351, 358–59, 295 N.E.2d 819, 824 (1973); *accord Ridenour v. State*, 639 N.E.2d 288, 292 (Ind. Ct. App. 1994). Although *Lindsey* involved exposure to factually incorrect newspaper articles published during the trial, "the *Lindsey* procedure has been applied to a variety of situations where potentially improper juror influence exists." *Ridenour*, 639 N.E.2d at 292 (collecting cases).

[15]   Subsequent cases have clarified that, if the trial court determines that no risk of substantial prejudice exists, it need not investigate the matter further. *Caruthers*, 926 N.E.2d at 1021 (citing *Joyner*, 736 N.E.2d at 239). Indeed, a trial court "is required to act only if there has been presented some basis for a reasonable belief that one or more of the jurors has been exposed to potentially harmful publicity." *Ridenour*, 639 N.E.2d at 292 (citing *Jarvis v. State,* 441 N.E.2d 1, 7 (Ind. 1982)). Thus, a trial court "is not required to initiate an inquiry as a 'fishing expedition.'" *Id.* And the trial court has discretion to take what actions it deems necessary and appropriate at all stages of this process. *Id.*

[16] Here, Taylor claims that the trial court should have held a "*Lindsey* hearing" to see if Juror 3082 said anything to the remaining jurors about her bias and should have admonished the remaining jurors regarding Juror 3082's removal. Taylor, however, never requested that the trial court hold such a hearing or so admonish the jury. "The failure to raise a claim of error [at trial] generally waives that issue for appeal." *Caruthers*, 926 N.E.2d at 1020 (citing *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009)). Taylor has therefore failed to preserve any claim of error on this issue. *See id.* "We nevertheless sometimes entertain such claims under fundamental error, meaning an error that makes a fair trial impossible or that constitutes a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Id.*

[17] We discern no error, much less fundamental error, in the present case. As set forth above, when the trial court was made aware that Juror 3082 claimed to have had more contact with Sgt. Brahaum than she originally indicated, and therefore might be biased against Taylor, the trial court had Juror 3082 brought back into the courtroom for additional questioning. Juror 3082, a teacher, confirmed that she had seen Sgt. Brahaum at her school with a bandage on her arm. The court asked Juror 3082 if she could be impartial, and she responded that she had already formed an opinion about the case. The trial court indicated that it had no choice but to dismiss Juror 3082, and defense counsel agreed.

[18] Notably, there was no indication from Juror 3082, or any other source, that Juror 3082 told the other jurors that she had seen Sgt. Brahaum with a bandage

on her arm. Thus, there was no suggestion that the other jurors had been exposed to this extra-judicial information, and we cannot fault the trial court for failing to *sua sponte* question the remaining jurors about Juror 3082's removal from the jury. *See Ridenour*, 639 N.E.2d at 292 (holding that trial court did not err by failing to question remaining jurors regarding the removal of a juror who indicated that her family had experienced child molestation because there was no evidence suggesting that the excused juror had shared her concerns with the remaining jurors).

[19] If there has been no exposure to extra-judicial matters, the trial court need only instruct the jury of the hazards of such exposure and the necessity of avoiding exposure to any out-of-court comments about the case. *Lindsey*, 260 Ind. at 359, 295 N.E.2d at 824. Although the trial court here did not specifically admonish the remaining jurors regarding the facts that led to Juror 3082's removal, it did inform the jury that she had been removed. It also instructed the jury to avoid independent research about the case, to avoid any media coverage regarding the trial, and to base its decision solely on the evidence presented in court. *See* Appellant's App. pp. 59–60. Thus, we are unable to say that the trial court erred in its handling of Juror 3082's removal.

[20] We find Taylor's citation to *Threats v. State*, 582 N.E.2d 396 (Ind. Ct. App. 1991), *trans. denied*, to be unavailing. In that case, one of the members of the venire stated during jury selection that he had known the defendant in years past. This venireman, however, was not excused and was chosen as the jury foreman. Then, during the jury's deliberations, this juror told the other jurors

that he knew the defendant's wife. One of the other jurors informed the bailiff of this, and the bailiff informed the trial court judge. The trial court removed the foreman and replaced him with an alternate juror. This prompted the defendant to move for a mistrial, which the trial court denied.

[21] On appeal, the defendant, citing *Lindsey*, argued that the trial court erred by not admonishing and questioning the jury regarding the removal of the juror. The *Threats* court rejected the State's argument that the defendant's claim was too speculative, concluding that, without questioning the jury, "any musing as to whether or how removing [the juror] affected the jury necessarily remains purely conjectural on direct review," and that "to require a non-speculative showing in the appellate brief that the jury became biased against Threats because of [the removed juror]'s conduct would be to impose an unreachable threshold." *Id*. at 400.

[22] Citing this language, Taylor claims that, here, we cannot know whether the jury was affected by Juror 3082's bias and removal because the trial court did not question the jury on this subject. The *Threats* court, however, emphasized that the facts before it, where there was no doubt regarding the jury's exposure to possible prejudice, "must be distinguished from those which require the claimant, at the threshold, to prove the jury was exposed to extraneous material before imposing on the trial court a duty to determine whether the exposure tainted the jury." *Id.*

[23] The present case is precisely the sort of case where there is a question of whether the jury was exposed to any prejudicial matter. That is, in *Threats*, it was clear that the jury was exposed to potentially prejudicial extra-judicial information because it was one of the other jurors who reported the foreman's relationship with the defendant's wife. *Id.* Here, although the jurors were informed that Juror 3082 had been removed because of her relationship with Sgt. Brahaum, there is no indication that the other jurors were aware that Juror 3082 had seen Sgt. Brahaum with a bandage on her arm. Because there was no suggestion that the jury had been exposed to this extra-judicial matter, there was no need for the trial court to further question the remaining jurors. *See Ridenour*, 639 N.E.2d at 292 (holding that there is no need to employ the procedure set forth in *Lindsey* unless there is a basis for believing that the jury may have been subject to "improper out-of-court stimuli[.]").[1]

## Conclusion

[24] Because Taylor did not ask the trial court to hold a *Lindsey* hearing to determine whether the jury was exposed to any extra-judicial matters, he has waived any

---

[1] Even if the jury had been exposed to the fact that Juror 3082 had seen Sgt. Brahaum with a bandage on her arm, we fail to see how this would have prejudiced the jury such that it would amount to a denial of due process. There was no specific timeframe given for when Juror 3082 saw Sgt. Brahaum, and there are any number of reasons why Sgt. Brahaum might have had a bandage on her arm aside from her encounter with Taylor. And even if the bandage was a result of the injuries caused by the struggle with Taylor, the defense did not deny that Sgt. Brahaum had been injured. Instead, the theory of the defense was that Sgt. Brahaum unnecessarily escalated the situation because she was afraid that she would not be able to obtain the blood sample within the statutory three-hour time limit and unreasonably attempted to force Taylor into compliance. The defense therefore argued that Taylor did not knowingly batter Sgt. Brahaum but merely acted instinctually in response to the pain of the taser and the pain of the hold Sgt. Brahaum used on him. Thus, the fact that Sgt. Brahaum may have had a bandage on her arm was immaterial to Taylor's defense.

error with regard to the trial court's actions after dismissing Juror 3082. There is also no indication that the remaining jurors were aware that Juror 3082 had seen Sgt. Brahaum with a bandage on her arm, and the trial court instructed the jurors to base their verdict solely upon the evidence presented at trial. Taylor has therefore failed to establish any error, much less fundamental error, on the part of the trial court for failing to questioning the remaining jurors with regard to the circumstances that led to Juror 3082's removal. Accordingly, we affirm the judgment of the trial court.

[25] Affirmed.

Robb, J., and Pyle, J., concur.